## In the Matter of the Estate of John Lynn, Deceased.

Surrogate's Court, New York County, November 26, 1940.

*Edwin E. Singer* and *S. Earl Levene*, for the petitioner.

*Gifford, Woody, Carter & Hays*, for the trustees.

*Choate, Larocque, Mitchell & Ely* [*Edward G. McLaughlin* and *Casimir J. F  Patrick* of counsel], for Ethel Lynn McCarthy, individually and as coexecutrix, etc., of Edgar Allan Lynn, deceased, respondent.

*James J. McLoughlin*, for Eric Victor Smaje, individually and as coexecutor, etc., of Edgar Allan Lynn, deceased, respondent.

*Cullen & Dykman [Francis A. Booth* of counsel], for the Brooklyn Trust Company, respondent.

FOLEY, S. In my prior decision the question of the construction of the will presented in the accounting proceeding was carefully considered and determined. (*Matter of Lynn,* 174 Misc. 361.) That question involved the extent of the exercise of a power of appointment given by the will of the testator to his son, Edgar Allan Lynn. The surrogate found that the power of appointment was effectively exercised in the residuary clause of the will and that the appointive property vested in equal shares in the residuary legatees, a sister and a friend of the donee. Among the integral parts of the dispute, there was involved the disposition of the rights of one Mariano Rodrigues, described as a friend. The donee in his will had bequeathed to him the sum of forty dollars a week, with directions to his trustees to " set up a fund from my estate the income of which shall be sufficient to pay " the periodic weekly amount. The donee had subordinated this bequest to the payment of two legacies of $75,000 to his sister and another friend, Eric Victor Smaje. The individually owned assets of the donee amounted to approximately $118,000. That amount was necessarily insufficient to pay the debts, funeral and administration expenses and the preferred legacies, which aggregated $150,000.

The surrogate held that no part of the appointive property could be used for the creation of the trust for the benefit of Rodrigues because of the absence of any indication of intent on the part of the donee to subject to that charge the appointive fund left by the donor.

Rodrigues now applies for the vacatur of the decree dated August 16, 1940, which was based upon the decision above referred to. He asks that the hearing be reopened and a new trial granted on the ground of newly-discovered evidence.

The application is denied. The alleged newly-discovered evidence is stated in the moving papers to be the testimony of Irving T. Bergman, an attorney who drew a prior will of the donee. That will was executed in 1935. It was revoked by the will of the donee admitted to probate, which was dated October 27, 1937. The actual draftsman of the latter will has not been discovered and the probabilities are that it was drawn by the maker, the donee. He was a lawyer of many years' experience. That fact is not newly discovered. It was considered by the surrogate as a circumstance in the original determination. The proposed testimony of Mr. Bergman is alleged to be conversations which occurred between Edgar Allan Lynn and himself at the time of drafting the will of

1935, tending to prove that the testator intended by the dispositions of his will to cover both his individual property and the appointive property as a merged fund for the payment of all his bequests, including the trust to be set up for Rodrigues. The testimony is also directed to prove that when Edgar Allan Lynn, the donee, directed the setting up of the fund from " my estate " he did not intend to refer only to his individual estate, as the surrogate had construed the will (citing *Low* v. *Bankers Trust Co.*, 270 N. Y. 143), but intended to include also the estate over which he had the power of appointment.

It is further stated in his supporting affidavit that " Mr. Lynn, relying on your deponent's advice in determining the size of the bequests to be made and the devolution of all his property, intended that not only his personal estate, but the property over which he had power of appointment in his late father's estate, be made available for the payment of these bequests, after the exhaustion of his own property." There are other statements included in the supporting affidavit, but almost all of them constitute an attempt to introduce direct statements of intention evidenced by the declarations of the donee as to what he meant but had failed to state in his will. These declarations are incompetent and would have been excluded if they had been offered upon the original hearing. In no event could they be received in evidence. (*Dwight* v. *Fancher*, 245 N. Y. 71; *Matter of Smith*, 254 id. 283; *Brown* v. *Quintard*, 177 id. 75; *Chase National Bank* v. *Chicago Title & Trust Co.*, 164 Misc. 508.)

Evidence of extrinsic circumstances is frequently used to assist the court in the interpretation of language which a testator has used to express his testamentary intentions. " Parol evidence is not admissible to show that the testatrix did not mean what she has said in words, though these words may have been chosen by the attorney who drafted the will " rather than by the testator. (*Dwight* v. *Fancher, supra.*) In that case there was attempted to be proved that the word " children " was intended by the testatrix to include grandchildren. There, as here, the witness was the attorney and the draftsman of the will. His evidence was held to be inadmissible.

In *Brown* v. *Quintard* (*supra*) a defective residuary clause was attempted to be cured by a revoked will which had been received in evidence for that purpose. The situation there was somewhat similar to that in the present application, since here the terms of the will executed in 1937 are sought to be interpreted and altered by evidence of the testator's declarations in connection with the revoked will executed in 1935. The Court of Appeals said (p. 83): " Extraneous and parol evidence is admissible to explain a will

when there is a latent ambiguity arising *dehors* the instrument, but never to supply, contradict, enlarge or vary the written words."

In *Matter of Smith* (*supra*) it was stated that direct statements of intention may not be received and that " the probable intention of the writer, as indicated by extrinsic facts, may not prevail over the plain meaning of the written word, * * *." Aside from direct statements of intention, the courts are liberal in the admission of circumstances surrounding the testamentary act, evidence concerning the testator's relation to the objects of his bounty, the size of the estate and other factors which throw light upon the purpose of the plan of distribution. These circumstances, however, are entirely different from evidence of the kind sought to be introduced here where there is no latent ambiguity and where the declarations of intention, not contained in the will, are attempted to be injected into it in violation of the stated rule which prohibits them. (*Matter of Smith, supra,* citing 5 Wigmore on Evidence [2d ed.], §§ 2470, 2471.)

The reason for the rule of exclusion is particularly observable by specialists in the law of wills and by the surrogates in their daily activities. The mistake or omission of the maker of the will might find a ready explanation or attempted correction by the draftsman. Unambiguous gifts to definitely designated beneficiaries in specified amounts could be destroyed by oral testimony. *Stirpital* and *per capita* distributions or clear provisions as to vested or contingent remainders could be altered in substance and in character by evidence of the testator's alleged words of intention directly contrary to the actual language used. Few wills would be free from the dangers of attack and a trusting and indulgent court might be deceived occasionally into accepting the truth of the alleged declarations of the testator.

Upon the main questions covered by my prior decision, I stressed particularly the parallel between the will here and that construed in *Low* v. *Bankers Trust Co.* (*supra*). In the latter case the Court of Appeals found strong evidence of an intent on the part of the testator to direct the payment of a legacy of $100,000 to the widow of the donee, which she was to take, in his language, " in lieu of dower or any other interest ' in *my* estate.' " (Italics in original.)

In this proceeding the will directed the trustees to set up a fund sufficient to produce the fixed weekly payment to Rodrigues " from my estate."

In *Low* v. *Bankers Trust Co.* (*supra*) Chief Judge CRANE, in the process of reasoning to a conclusion which held that the legacy must be paid from the individual funds of the donee rather than from the appointive fund, wrote: " We can read this will from beginning

to end without receiving a suggestion or intimation that the testator had a power of appointment under the deed of Francis L. Hine. The will does not indicate that he even had the power of appointment in mind or that he actually or in fact intended to exercise the power of appointment. It is section 18 of the Personal Property Law, read into this will, which makes it obligatory upon the courts to consider the passing of all personal property as including the power of appointment. This section, however, does not prevent us from seeking the testator's intention as to other matters from the reading of his will, having in mind the situation and condition of his property. (*Lockwood* v. *Mildeberger*, 159 N. Y. 181, 187, 188.) Surely the testator, when he gave a legacy of $100,000 to his wife in lieu of other interests in ' my estate,' did not intend that the legacy should be paid out of the estate of Francis L. Hine. The general rule is that the testator's personal estate, which the will does not otherwise dispose of or exempt, constitutes the natural and primary fund for the payment of legacies as well as of debts. This rule is controlling unless the will either in express terms or by necessary implication discloses a different intention on the part of the testator. (*Farmers' Loan & Trust Co.* v. *Kip*, 192 N. Y. 266, at p. 283.) "

The will of the donee was executed after the decision in the *Low* case was rendered by the Court of Appeals. It is to be construed in the light of the existing law.

It is urged by counsel for Rodrigues here that the donee, Mr. Lynn, was an attorney and that he must have intended that the dispositions in his will, and particularly the trust for Rodrigues, should be carried out by a merger of his private fortune and the property which his father had given to him to appoint. There is no presumption of perfection that goes with a will of a lawyer. I pointed out in *Matter of De Forest* (147 Misc. 82) that even the wills of the members of our profession are subject to the hazards and vicissitudes of litigation and the oversights and mistakes of laymen. Samuel J. Tilden's will is a frequently quoted example of a mistake of law made by a distinguished member of the bar. But the isolated error is magnified at the expense of the profession.

The will must be construed as it is written and pursuant to established canons of construction and the rules of property laid down by statute and authority. These rules furnish the beacons by which the draftsmen of wills and the courts of first instance are to be guided. If they can be lightly disregarded, the judicial process of the interpretation of wills would quickly become a matter of caprice, speculation and favoritism.

In connection with this subject, the language of Judge CRANE in *Low* v. *Bankers Trust Co.* (*supra*) is pertinent: " As the testator

intended his personal property to pay his debts and legacies, we do not see how this intent is to be overcome or set aside because of something the testator might have done if he had thought about it, but in reality failed to do. Admitting that the testator did not want his children to have any large amount of money under their control before thirty, we do not see how the courts can take from them that which the law gives simply because the father has failed legally to execute his intent as to this trust property. Our law is very liberal in permitting people to make wills as they please, but in the absence of a legally expressed will, property passes according to our statutes and decisions, and we have no power to override these in the absence of a properly worded and constructed will. Intent is not sufficient; the intent must be expressed according to law."

Mr. Lynn might have written into his will an express direction that the pecuniary legacies and the preliminary trust for Rodrigues should be paid out of the fund over which he had a power of appointment. Such was the language used in *Matter of Wainwright* (248 App. Div. 336). His omission to do so, and the particular language used in connection with the Rodrigues trust, as a subordinate part of his will, furnish strong indication of an intent that he desired the pecuniary legacies and the trust to be paid out of his personal assets. (*Low* v. *Bankers Trust Co., supra; Farmers' Loan & Trust Co.* v. *Kip*, 192 N. Y. 266.) In the latter case the general rule that the testator's personal estate, which the will does not otherwise dispose of or exempt, constitutes the natural and primary fund for the payment of legacies as well as of debts was followed. The effect of that decision, that legacies should not be paid out of the appointive property in the ordinary case, is emphasized by the dissent of Chief Judge CULLEN, who stated that he believed the legacies should be charged out of the property which was subject to the power of appointment. The majority of the court disagreed with him.

None of the alleged newly-discovered evidence justifies the reopening of the decree. (*Collins* v. *Central Trust Co. of Rochester*, 226 App. Div. 486.) That part of it which relates to the amount of the property individually owned by the donee at the time of the making of either will, was plainly evident at the time of the original submission. It could not and did not affect the determination because of the express intention of the donee.

No legal ground for the vacatur of the decree has been shown.

Submit order on notice denying the application accordingly.