Charles T. Yeager, S.
This is a motion by the State Tax Commission for an order, pursuant to subdivision 6 of section 20 of the Surrogate’s Court Act, modifying the pro forma taxing-order of February 14, 1953 so as to increase the valuation of certain stock of the Buffalo Jewelry Case Company, Inc., to the amount so fixed and agreed to by the executors for purposes of the Federal estate tax, and so as to increase the value of the net estate and the amount of tax accordingly, and in such amount as the court shall determine to be just and lawful, and for such other and further relief as to this court shall seem just and proper.
Subdivision 6 of section 20 of the Surrogate’s Court Act gives the Surrogate power: “ To open, vacate, modify, or set aside, or to enter as of a former time, a decree or order of his court; or to modify or resettle a decree or order of his court to conform its provisions to the decision in writing of the surrogate; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers conferred by this subdivision must be exercised only in a like case, and in the same manner, as a court of record and of general jurisdiction exercises the same powers.”
There are a number of dates and events which are relevant and have significance. October 29, 1951 was the date of decedent’s death. On November 29, 1951 his will was probated. On January 29,1953 the New York estate tax return was verified and filed, and on the same date the Federal estate tax return was filed. On February 14, 1953 the estate tax appraiser duly reported that the value of 1,115 shares of decedent’s stock in Buffalo Jewelry Case Co., Inc., was $52.85 per share or a total of $58,927.75 and the Surrogate made an order on that date determining the value to be as reported by the executors and found by the appraiser: $58,927.75. On March 11, 1955 the district director of internal revenue put a value on said stock of $75 per share, or $83,625 in all, and assessed a Federal estate tax accordingly. The executors paid it. On August 16, 1955 *391 the executors accounted judicially and were discharged. On October 10, 1955 the notice of the tax commission’s motion was served.
As part of both the New York and the Federal returns, the executors furnished certain supporting data: (1) a comparative balance sheet of Buffalo Jewelry Case Co., Inc., for the years 1947-50 inclusive, and the first 10 months of 1951; (2) comparative profit and loss statements for the years 1947-51 inclusive; (3) a letter from the executors’ attorney describing the formula which had been used in evaluating said stock, and offering to furnish the estate tax appraiser with such additional information as he might require.
The State Tax Commission had certain remedies available if it felt dissatisfied with the Surrogate’s order of February 14, 1953:
(1) An appeal to the Surrogate, under section 249-x of the Tax Law, within 60 days from the date of his determination. The commission took no such appeal.
(2) An application to a Supreme Court Justice, under section 249-x of the Tax Law, within two years from the date of the Surrogate’s determination, for a reappraisal of the stock. The commission made no such application.
(3) An appeal to the Surrogate, under section 249-x of the Tax Law, at any time, on the ground of fraud, falsity or incompleteness. The commission has not appealed.
(4) A motion under subdivision 6 of section 20 of the Surrogate’s Court Act, quoted above, “ [t]o open, vacate, modify, or set aside ” the order of February 14, 1953; “or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause.”
The State does not claim fraud or clerical error, but does claim there is newly discovered evidence and other sufficient cause requiring a modification of the Surrogate’s order of February 14,1953 so as to harmonize with the valuation of said stock as found by the district director of internal revenue. It urges that the executors accepted a higher valuation in the Federal tax proceeding and that, in the New York proceeding, the value of the stock was not “ litigated.”
Let us consider the question whether or not the value of the stock was litigated in the New York proceeding. If not litigated, but a mistake took place, there have been instances where courts have permitted the mistake to be rectified. In Matter of Troescher (265 App. Div. 971, affd. 291 N. Y. 760) the executors placed full value on a promissory note. When they later found it was not worth its full value, they were permitted to change *392 its value on the ground that the question of value had not been litigated, only assumed. But how and when did the executors proceed? They made their motion to modify the pro forma order within two years after the entry of the order originally fixing the tax. The Appellate Division expressly pointed out that it was undisputed that the promissory note listed at $9,250 was in fact worthless; and that the only contention raised by the State was that the Surrogate had no power to modify the pro forma order after the time to appeal had expired. A divided court held that he had such power and that the tax was erroneously assessed under a mistake of fact. The Court of Appeals affirmed on the ground that the motion had been timely made, saying that although the new order of the Surrogate changing the value was made more than two years after entry of the order originally fixing the tax, the motion itself was made within two years after such- entry, which was timely.
In the instant case, in contrast to the Troescher case, we have sharp disagreement as to value of an estate asset and the further difference that the motion to modify was not made within the prescribed two-year period.
There is a Fourth Department case of interest: Matter of Kramek (275 App. Div. 987). Surrogate Paul of Erie County had vacated a pro forma tax order and directed a refund to the estate for overpayment in taxes. The tax commission appealed. Three of the Justices voted to affirm, simply modifying the order on the law by striking out the last two paragraphs of the order. The other two Justices voted to modify the order on the ground that the petitioner, as the surviving tenant by the entirety, had not carried the burden of proof with respect to several parcels of real estate to accomplish a reduction in their reported value. Those two Justices observed in their dissenting opinion that the facts set forth in the tax schedules were not litigated but were assumed to be true. We must infer that the other three Justices were of the opinion that the values had been litigated in the New York tax proceeding.
We hold that the value of the Buffalo Jewelry Case Co., Inc., stock was litigated in the New York estate tax proceeding. We do not concur in the State’s claim that the executors accepted (lie higher values found by the district director of internal revenue in a sense which binds them or estops them. They may simply have bought their peace, avoiding protracted and costly litigation.
Let us now consider the State’s argument that the Federal determination constitutes newly discovered evidence within sub *393 division 6 of section 20 of the Surrogate’s Court Act. The State does not say it has just discovered that the financial statements, balance sheets, etc., with which it as well as the Federal Government were supplied, were incomplete, false or erroneous. Nor does it claim that it has, with justification, just discovered that certain conditions in the jewelry case industry, or other factors which it could not reasonably have been expected to know about, exist and would necessitate a higher valuation. We cannot agree that a different tax conclusion arrived at by one branch of the government, as compared with the conclusion of another branch of the government, both based on the same evidence, in and of itself constitutes “newly discovered evidence.” The criteria applicable on motions of this kind based on newly discovered evidence are generally known and understood. (See People v. Priori, 164 N. Y. 459, 472.) It is true that the State can qualify as to some of the criteria, for example: (a) the time of discovery of alleged evidence must have been subsequent to the trial; and (b) the “ evidence ” must be such as could not have been discovered before the trial by the exercise of due diligence. In other respects the State cannot so qualify; (a) the new evidence must not be merely impeaching or contradicting the former evidence, and we feel that the district director’s determination of $75 per,share instead of $52.85 is nothing more than impeaching and contradicting; (b) the new evidence must be such as will probably change the result if a new trial is granted, whereas we see no such likely change in the result. Are we expected to assume that a finding of taxable value of stock in a decedent’s estate by a Federal official is superior to the determination of a State official? We decline to make such assumption.
To constitute newly discovered evidence, it is necessary to show that the evidence would have been admissible if offered upon the original hearing. (Baily v. Hornthal, 1 App. Div. 44, and Matter of Lynn, 175 Misc. 441, affd. on other grounds, 261 App. Div. 531, affd. 287 N. Y. 627.) It was physically impossible to offer, in the New York proceeding a value reached subsequently by the Federal authorities.
It is to be noted that there is a requirement in section 249-w of the New York Tax Law that the executor of every estate which is subject to a Federal estate tax file with the State Tax Commission a copy of the final determination of the Federal tax. This appears to have been done on March 22, 1955. The said requirement obviously is for the purpose of enabling the State to determine whether any additional tax is due under 249-n which imposes a tax equal to the maximum credit allowable *394 against the Federal estate tax. As Surrogate Delehanty said in Matter of Guggenheim (185 Misc. 606, 607): “ The statutory scheme as a whole is a device for measuring the total tax exacted by the State of New York.”
We may assume that the value of $75 represented a compromise or solution without litigation. Possibly neither the district director nor the executors were completely satisfied. The courts favor settlements of legal differences. Although our assumption of a compromise is not essential to our decision, it is relevant to say further that compromises are not in themselves evidence as to admission of liability; nor do offers to compromise constitute admissions of fact. (Hawthorne v. Eckerson Co., 77 F. 2d 844; Smith v. Satterlee, 130 N. Y. 677; Tennant v. Dudley, 144 N. Y. 504; Johnson v. Tyler, 275 App. Div. 726; 4 Wigmore on Evidence [3d ed.], § 1061, p. 28.)
Finally, we come to the executors’ charge of laches on the part of the State. The tax returns were filed on January 29, 1953; the Surrogate’s order determining the New York tax was made on February 14, 1953; the district director’s determination of the Federal tax was made on or about March 11, 1955. The State’s motion was not made until October 10, 1955 — about two years and eight months after entry of the Surrogate’s taxing order; and about seven months after it had received a copy of the Federal Government’s determination. Meanwhile the executors had made a final accounting and been discharged by a decree of the Surrogate on August 16, 1955. The State is guilty of laches. It is of great importance that, commensurate with proper regard for substantial rights, legal procedures move with promptness. As has been said, delayed justice may often mean no justice. The courts and lawyers are becoming more alert to the importance of prompt trials and determinations — akin to a streamlining of legal proceedings, as evidenced by extensive use of the pretrial conference and the creation of the Tweed Commission in New York State.
The defense of laches has been held applicable to motions under subdivision 6 of section 20 of the Surrogate’s Court Act and its forerunner, subdivision 6 of section 2481 of the Code of Civil Procedure. (Matter of Tilden, 98 N. Y. 434; Matter of Schinasi, 139 Misc. 459, affd. 233 App. Div. 738; Matter of Sielcken, 162 Misc. 54.)
A delay of nearly two years in applying to reopen a Surrogate’s decree settling an intermediate account was held fatal (Matter of Reynolds, 143 Misc. 300); and more than two years was held a bar to an attempt to correct alleged irregularities in a previous order of the Surrogate. (Matter of Furlong, 268 App. Div. 749.)
*395 There should come a time when, after a judgment or order of a court has been made, interested parties may proceed under it with safety. The element and importance of finality has been appreciated by the courts. In Matter of Barnum (129 App. Div. 418) the executors wanted a re-examination of the value of real estate, and they had two appraisers who said their original valuation of $150,000 was too high. The court declined, saying no fraud or newly discovered evidence had been shown, and the court emphasized the need of finality in such decisions.
In Matter of Lowry (89 App. Div. 226) a sale of real estate took place for just about half the value shown in the tax return. The court held that, even though a mistake had evidently been made, it was not enough to warrant a modification. The court stressed (supra, p. 229) that a contrary rule would lead to ‘‘ intolerable uncertainty and confusion. ’’
The value of securities was involved in Matter of Dunne (138 Misc. 840). The court refused to correct an alleged error in fixing the value of corporate stock sworn to by the executrix and her expert, after the time to appeal had passed. The court held (supra, p. 843) that subdivision 6 of section 20 of the Surrogate’s Court Act was inapplicable and said: “ the discretion * * * referred to * * * would not authorize the court in reopening a determination fairly arrived at after due hearing and full information, on facts which were fully known at the time.” (See, also, Travitsky v. Schamroth, 277 App. Div. 1018; Matter of Hawley, 100 N. Y. 206.)
For the reasons we have stated and in our discretion the motion of the State Tax Commission should be denied. An order may be submitted on notice in accordance with this decision.