S. Samuel Di Falco, S.
The accounting executors and trustees request a construction of paragraph 2 of article tenth of the will, and in particular, a determination whether the remainder of each of the trusts therein created passes to the descendants of the primary beneficiary of that trust or to the descendants of some person other than such “ primary beneficiary ”. The testatrix was survived by two daughters, one of whom has three living daughters, the other having three living sons. The will treats the daughters on an equal basis, but it gives larger legacies to the three grandsons than those given to the three granddaughters. The testatrix adverted to this difference of treatment and explained the reason for it in her will.
Article tenth disposes of the residuary estate, which is divided in two equal parts. The first paragraph sets up one of the equal portions in trust for the descendants of the daughter, Carolyn S. Andre. The other portion is disposed of in the paragraph which the court is asked to construe, which reads as follows:
“2. One-half (%) of my residuary estate shall be divided into equal shares, so that there shall be one share for each of the children in being at the time of my death of my daughter anne s. schuster (herein sometimes called ‘ Anne ’), and one share for the descendants then in being of each deceased child of Anne, collectively. Each such collective share for such descendants shall be subdivided so that there shall be a per stirpes subshare for each such descendant. Each share and sub-share shall be held in trust by my Trustees, in a> separate trust, for the benefit of such child or descendant for whom set apart (hereinafter referred to as the ‘ primary beneficiary ’ of such trust), and the income thereon paid to the primary beneficiary thereof during his or her life. Upon the death of each such primary beneficiary, the principal of each such respective trust shall be *943 held in trust and the income thereon shall be paid to my daughter Anne during her lifetime, and upon the death of the survivor of such primary beneficiary and my said daughter Anne, the principal as it shall then exist shall be paid over to her descendants then living, per stirpes; but if there be none such, then to my 1 distributees ’ as hereinafter defined.
‘ ‘ My Trustees are hereby directed to pay to my daughter anne, out of the corpus of any or all of the separate trusts created for the benefit of primary beneficiaries, and out of the corpus of any or all of said separate trusts of which she shall become the second life beneficiary, as hereinabove provided, such sum or sums as my said daughter shall request in writing from time to time; provided, however, that the total of such payments in any calendar year, out of the corpus of any such trust, shall not exceed a sum equal to eight per cent (8%) of the ‘ value ’ (as hereinafter defined) of the corpus of such trust; it being further provided that the right on the part of my said daughter Anne to request and receive said sums out of corpus, shall continue only during her lifetime, and shall not be cumulative, that is to say, if she shall not during any calendar year request payment of the whole or any part of a sum equal to eight per cent (8%) of said ‘ value ’ of the corpus of any such trust (as hereinafter defined), she shall be deemed to have waived her right to make such request for that year. No such request shall in any event be made less than two (2) years after the date of my death.”
Although judicial construction of paragraph 1 of article tenth is not requested herein, note should be made of the fact that paragraphs 1 and 2 are almost identical in text, the only difference being the names of the two daughters and a few very minor variations.
The executors and trustees believe that it was the intent of the testatrix that after setting up a separate trust for each of the children of her daughter Anne, the remainder of each trust would pass ultimately to the issue of the grandchild for whom that trust was created. The will gives the remainder to “ her descendants ” and those two words following closely, as they do, the words ‘ ‘ my said daughter Anne ’ ’, affords scant basis for the argument of the fiduciaries. However, they contend that there was an error in draftsmanship in the use of the word “ her ” rather than “ his ”, and that the testatrix actually meant to say “his descendants”, intending to refer, respectively, to the three sons of Anne. In support of their charge that an error was made in expressing the testamentary wishes of Mrs. Storrs, the petitioners offer an affidavit by the attorney who drew the *944 will. If called as a witness, lie would testify that the testatrix informed him that she wished to set up separate trusts for each grandchild and that upon the death of the grandchild and the mother of that grandchild, the principal was to go to the descendants of that grandchild. If he or she left no descendants, the principal would then go to the remaining members of the family of the testatrix. The attorney is evidently of the opinion that paragraph 1 carries out that idea. He would testify that in drawing up the parallel trusts in paragraph 2, the text of the first paragraph was repeated without taking thought of the fact that while all of Carolyn’s children were daughters, all of Anne’s children were sons. The attorney refers to the repetition of the text as an “ inadvertent error.” Objection to this testimony is made by the committee of the property of one of the grandsons of the testatrix. The parties have thus waived a hearing and desire the court to treat the matter as if objections to the testimony had been made at a hearing.
The rule is firmly established in this State that direct statements of intention of a testator are inadmissible to explain the unambiguous language used in the will or to correct errors or omissions. (Matter of Deane, 4 N Y 2d 326, 333; Matter of Smith, 254 N. Y. 283; Matter of Lynn, 175 Misc. 441, 443, affd. 261 App. Div. 513; Matter of Salterini, 7 Misc 2d 497; 9 Wig-more, Evidence, § 2471.) In the will of this testatrix, the text is plain and clear. There is neither a patent nor a latent ambiguity. No difficulty is encountered in reading the words used in the will. A question arises only on the basis of the charge of the draftsman that through his error, the written words do not reflect what was in the mind of the testatrix. As we pointed out in Matter of Salterini (supra), if courts should permit the substitution of the draftsman’s recollection of what the testator told him, for the language of the will itself, the instrument would cease to be the repository of the decedent’s testamentary program. Even assuming the utmost good faith of the witness, the passage of time and other factors tend to dim his recollection of conversations. The rule which excludes such evidence is a sound and salutary one.
Moreover, it is obvious that in order to express the testamentary plan suggested by the petitioners, it is not enough simply to substitute the word “ his ” for “ hers That substitution would inject doubts and ambiguities not now existing; it would by no means dissipate them. The plain expression of such a plan would require a major rewriting of the text. Thus we do not have a case of a simple substitution of a word. The testatrix could not have read the text of her will and given it *945 the interpretation suggested by petitioners. The evidence offered by petitioners is inadmissible.
The testamentary plan of the testatrix as outlined in her will is not difficult to understand. She divided her residuary estate equally between the two branches of her family. One half is set up in trusts for those children of her daughter Carolyn who should be in being at the time of the death of the testatrix and for the descendants per stirpes of any child of Carolyn then deceased. The other half is set up in similar trusts for the children or descendants of her daughter Anne. It will be noted that the testatrix was not thinking only in terms of the granddaughters and grandsons living at the time of the execution of her will. She had in mind any grandchildren that might be born prior to her death and also any issue of a child who might predecease her. She directed that the income from each of the separate trusts be paid to the beneficiary for whose primary use that trust was created. In each case, she directed that upon the death of the primary beneficiary, the income of that trust be paid to the daughter from whom that primary beneficiary was descended. It was therefore within the realm of possibility that each of the daughters would enjoy the income of a large portion of the fund set apart for her branch of the family. Moreover, it should be noted that the testatrix directed her trustees to pay to each of her daughters sums from the principal of “ any or all of the separate trusts ” set up for their respective branch of the family. The testatrix gave no directions as to the manner of charging the invasions of principal to the various trusts. She did make it clear, however, that the principal could be invaded for the benefit of a daughter even during the period when the trusts were for the primary benefit of that daughter’s children. Her failure to give explicit and detailed directions for an equitable allocation of the principal payments is understandable if all living, descendants are to share equitably in each and every trust in his or her branch of the family. That failure would be very difficult to understand if that burden were to fall more heavily on one group rather than another.
The plain text of the will directs that upon the death ‘ ‘ of the survivor of such primary beneficiary and my said daughter Anne,” the principal of that separate trust shall be paid over to “her descendants.” The text makes it clear that in the paragraph under construction the word “ her ” refers to Anne Schuster. Thus as each trust terminates, the corpus will be divided among the issue of that branch of the family. The invasions of one or the other of the trust funds will not, therefore, fall indiscriminately or accidentally upon any particular *946 group of descendants of the daughter. All of the descendants will share in all of the trusts which terminate during their respective lifetimes. Thus the gift of the remainder in the terms stated plainly in the will, works fairly and equitably in view of the entire plan of the testatrix. Moreover, the text in both paragraphs disposes of the principal of the two separate portions of the residuary estate in the same manner. They reveal an intent to treat both branches of the family equally, to preserve each of the one-half shares of the residue for distribution among the issue of the daughter for whom it was originally set apart, and to divide each portion among the descendants of each daughter living at the time of distribution.
The court therefore holds that the principal of the various trusts for the descendants of Anne S. Schuster shall be distributed on termination of each trust to the descendants per stirpes of Anne S. Schuster, living at the time of termination of the trust.
Submit decree on notice construing the will and settling the account accordingly.