In the Matter of the Estate of FREDERICK A. SCALE, Deceased. JANE MANCE, Petitioner; AUDUBON SOCIETY OF NEW YORK STATE, INC., Appellant, and NATIONAL AUDUBON SOCIETY, INC., Respondent. [830 NYS2d 618]—

Mercure, J. Appeal from an order and decree of the Surrogate's Court of Albany County (Doyle, S.), entered November 18, 2005, which granted petitioner's motion for a determination of the validity, construction and effect of the disposition of certain property contained in decedent's last will and testament.

Frederick A. Scale (hereinafter the testator) died on June 4, 2002. His last will and testament, dated April 3, 2002, was duly admitted to probate on July 30, 2002, and letters testamentary were issued to petitioner, as the named executor. Petitioner seeks a determination of the validity, construction and effect of the disposition of property contained in paragraph 2F of the testator's will, in which the testator devised 10% of his residuary estate to "The Audubon Society of New York State." Both respondent Audubon Society of New York State, Inc. (doing business as Audubon International) (hereinafter the state organization) and respondent National Audubon Society, Inc. (doing business as Audubon New York) (hereinafter the national organization) claim that they were the intended beneficiary.

Finding a latent ambiguity in the clause, Surrogate's Court admitted extrinsic evidence and concluded that the testator intended to make a gift to the national organization. Specifically, the court relied upon an affidavit of the will drafter stating that, although the testator had "quickly, without reservation" stated upon inquiry that he intended to benefit the state organization, the testator was confused and actually intended to benefit the national organization. The state organization now appeals, arguing that Surrogate's Court improperly relied upon the drafter's affidavit and allegations of public confusion regarding the identity of the organizations to create an ambiguity when the will is unambiguous on its face. We agree.

It is well established that "in a will construction proceeding, the search is for the decedent's intent and not for that of the draft[er]" (*Matter of Cord*, 58 NY2d 539, 544 [1983] [citations omitted] [superseded by statute on other grounds]; *see Matter of Carmer*, 71 NY2d 781, 785 [1988]; *Matter of McCabe*, 269 AD2d 727, 728 [2000]). All rules of interpretation are subordinated to the requirement that we give effect to the testator's dominant purpose or plan for distribution as manifested in the will, and that "task is not furthered by rote ascription of technical meanings to terms regardless of context; instead, 'a sympathetic reading of the will as an entirety' is required" (*Matter of Carmer*, *supra* at 785, quoting *Matter of Fabbri*, 2 NY2d 236, 240 [1957]; *see Matter of Bieley*, 91 NY2d 520, 525 [1998]). Nevertheless,

the best indicator of the testator's intent is found in the clear and unambiguous language of the will itself and, thus, where no ambiguity exists, "[e]xtrinsic evidence is inadmissible to vary the terms of a will" (*Matter of Wickwire*, 270 AD2d 659, 661 [2000], *lv dismissed and denied* 95 NY2d 824 [2000]; *see Matter of Cord, supra* at 544; *Matter of Goldstein*, 46 AD2d 449, 450 [1975], *affd* 38 NY2d 876 [1976]; *see generally W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). When two charitable organizations claim to be the beneficiary named in a will, extrinsic evidence is admissible only if an examination " 'of the name[s] of the two corporations and of their general character and purposes as declared by the laws of their creation' " reveals a latent ambiguity (*Union Trust Co. v St. Luke's Hosp.*, 74 App Div 330, 333 [1902], *affd* 175 NY 505 [1903], quoting *Saint Luke's Home v Association for Indigent Females in City of N.Y.*, 52 NY 191, 194 [1873]; *see Matter of Seabury*, 107 Misc 705, 707-708 [1919], *affd* 191 App Div 889 [1920], *affd sub nom. Matter of Wentworth*, 229 NY 636 [1920]).

Here, the testator's will designated "The Audubon Society of New York State" and "The World Wildlife Fund" as beneficiaries of his residuary estate, with each receiving 10% of the residuary. Although the national organization and the Attorney General in his statutory capacity under EPTL 8-1.1 (f) argue that there is no entity named "The Audubon Society of New York State," it is undisputed that the state organization is named "The Audubon Society of New York State, Inc." In our view, the testator's failure to include "Inc." in naming his beneficiary does not render the will ambiguous (*see Union Trust Co. of N.Y. v St. Luke's Hosp., supra* at 334). Moreover, a review of the certificates of incorporation and consolidation of the state and national organizations—as well as their history—reveals that the general character and purpose of both is to promote understanding, conservation and preservation of wildlife, natural resources and the environment through research and public education.[1] Indeed, despite its criticism of the state organization's sustainable development and resource management

---

1. The national organization was founded in 1905 and works to preserve habitat for the benefit of birds, wildlife and people through science, education, advocacy initiatives and bioregional conservation programs. The state organization was incorporated in 1987 by a former employee of the national organization and seeks to foster more sustainable development and land management, with emphasis on improving protection of watersheds and biodiversity, for the benefit of birds, wildlife and people. In addition to bird conservation and the management of a wildlife sanctuary in Selkirk, Albany County, the state organization assists the owners of public and private property, including golf courses, in improving environmental management practices and maintain-

programs, the national organization concedes that the state organization sponsors a local bird conservation project, the New York Loon Conservation Project. Thus, reading the will as a whole in view of the surrounding "facts and circumstances" (*Matter of Fabbri, supra* at 240) and accepting the argument that the will evinces the testator's intent to donate money to charitable entities that benefit both wildlife generally and avian wildlife in particular, there is nothing on the face of the will to support the claim that the testator intended to donate to the national organization, rather than the state organization that he expressly named in the will (*see Union Trust Co. of N.Y. v St. Luke's Hosp., supra* at 334).

We reject the arguments of the national organization and the Attorney General that the use of the phrase "Audubon Society" by many charities creates a latent ambiguity in this will or, presumably, any will in which money is bequeathed to a charity bearing the "Audubon Society" designation.[2] Those parties rely upon the national organization's prior lawsuit commenced against the state organization for unfair competition due to its use of the phrase "Audubon Society," as well as affidavits from two employees of the national organization indicating that there is public confusion over the organizations' names. We note, however, that Supreme Court, New York County (Arber, J.), dismissed the national organization's claims in the prior action. As the court explained in rejecting the national organization's assertion that it had been harmed due to confusion over the similar names, "[courts] . . . must . . . assume that the public will use reasonable intelligence and discrimination with reference to the names of corporations with which they are dealing or intend to deal" (*Police Conference of N.Y. v Metropolitan Police Conference of E. N.Y.*, 66 AD2d 441, 445 [1979], *affd* 48 NY2d 780 [1979] [internal quotation marks and citation omitted]). Similarly here, we cannot say that the use of the phrase "Audubon Society" by a large number of charities or the allegations of public confusion in the record give rise to a latent ambiguity justifying the admission of "[p]arol evidence . . . to show that the testat[or] did not mean what [he] has said in words" (*Dwight v Fancher*, 245 NY 71, 74 [1927]; *see Matter of Lezotte*, 108 AD2d 1052, 1052-1053 [1985]; *Union Trust Co. of N.Y. v St. Luke's Hosp., supra* at 334-335; *cf. Matter of Van Vliet*, 224 NY

---

ing incidental refuge capacity that is environmentally hospitable to birds and other wildlife.

2. The national organization and Attorney General rely heavily on evidence in the record that as of July 2004, there were 34 organizations with the phrase "Audubon Society" in their names registered with the New York State Department of State, Division of Corporations.

572, 572 [1918]; *Matter of Patterson*, 139 Misc 872, 874-875 [1931]; *Matter of Seabury, supra* at 707-708).

Accordingly, we agree with the state organization that Surrogate's Court erred in relying upon the affidavit of the will drafter, in which he speculated based upon his discussions with the testator that, notwithstanding the testator's unequivocal statement that he wished to donate to the state organization, the testator actually intended to benefit the national organization.[3] In this regard, we note that "if courts should permit the substitution of the draft[er's] recollection of what the testator told him [or her], for the language of the will itself, the instrument would cease to be the repository of the decedent's testamentary program" (*Matter of Storrs*, 18 Misc 2d 941, 944 [1959]; *see Matter of Campbell*, 171 Misc 2d 892, 902-903 [1997]). Rather, as we have previously explained, "extrinsic evidence may not be used in this fashion to create an ambiguity in a will where none [exists]" (*Matter of Wickwire*, 270 AD2d 659, 662 [2000], *supra*). In short, as the will unambiguously dictates, the legacy must be paid to the state organization expressly named therein.

The state organization's remaining argument has been rendered academic by our decision.

Cardona, P.J., Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the order and decree is reversed, on the law and the facts, with one bill of costs, and matter remitted to the Surrogate's Court of Albany County for further proceedings not inconsistent with this Court's decision.

---

**3.** Even if we were to consider the affidavit as the Attorney General and national organization urge, the drafter's speculative assertion—based upon the observation of a third party that the mother had literature from the national organization in the family home—that the testator's mother "[a]pparently . . . had contributed to this organization at some points during her life" does not establish a prior relationship or connection between the national organization and the testator or his mother.