Matter of Ash (2020 NY Slip Op 01420)





Matter of Ash


2020 NY Slip Op 01420


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

528481

[*1]In the Matter of the Estate of Phyllis R. Ash, Deceased. Louis Montone, Individually and as Executor of the Estate of Phyllis R. Ash, Deceased. Respondent; Michael Rossi Jr., Appellant.

Calendar Date: January 10, 2020

Before: Garry, P.J., Mulvey, Devine, Pritzker and Colangelo, JJ.


Brenna Boyce PLLC, Rochester (David C. Sieling of counsel), for appellant.
Hinman, Howard & Kattell, LLP, Binghamton (Paul T. Sheppard of counsel), for respondent.



Colangelo, J.
Appeal from an order of the Surrogate's Court of Broome County (Alexander, S.), entered January 22, 2019, which, among other things, granted petitioner's application for judicial settlement of the accounting of decedent's estate.
In April 2017, Phyllis R. Ash (hereinafter decedent) died in her home in Broome County. Prior to her death, decedent, who had no children, executed a will, dated March 29, 2017, in the presence of her attorney, Richard Lewis, and his legal assistant. The will divided decedent's estate among certain named beneficiaries, including respondent, who is her nephew, and granted power of attorney to petitioner, the executor of her estate. Disputes arose among the named beneficiaries as to their inheritance rights under the will. The will was admitted to probate and letters testamentary were issued to petitioner, who filed a petition for a final judicial accounting on August 15, 2018. As relevant here, under the will, respondent was the sole beneficiary of decedent's house under article 2 and of decedent's "personal property" under article 5. Respondent was also one of nine named beneficiaries of the residuary estate, which included "all real and personal" property, under article 6 of the will.[FN1] In the final accounting, the term "tangible" was inserted into article 5 preceding the bequest of "personal property," thereby limiting the bequest to respondent under that article to decedent's "tangible personal property," consisting primarily of the contents of decedent's home.
Respondent answered the petition and filed objections to the accounting of the estate, challenging the qualification of the award under article 5 of the will.[FN2] Petitioner filed replies to the objections. Surrogate's Court found that an ambiguity existed with respect to articles 5 and 6, necessitating a hearing pursuant to SCPA 1420 to construe the will and determine decedent's intent with regard to the disposition of her estate, in particular, the disposition of her personal property. Following a hearing, the court dismissed respondent's challenge to the accounting of the estate and granted the relief requested in the petition by approving the accounting as originally submitted. The court interpreted article 5 as a bequest to respondent only of decedent's tangible personal property and ordered that the residuary of the estate be distributed to the nine named beneficiaries under article 6. This appeal by respondent followed.
We affirm. On appeal, respondent argues that there was no ambiguity in the four corners of the will and that a hearing was unwarranted. According to petitioner, however, the omission of the qualifying term "tangible" in article 5 was inadvertent. Further, petitioner submits that the language in the residuary clause of article 6, which included bequests of the remaining personal property to nine named beneficiaries, contradicted respondent's contention that decedent intended to give the remainder of her estate — including all of her personal property — exclusively to respondent under article 5. Had that been her intent, petitioner contends, the residuary language naming nine beneficiaries in article 6 would be superfluous.
At issue before Surrogate's Court were articles 5 and 6 of decedent's will, which set forth the following bequests:
"FIFTH: I bequest all of my personal property to [respondent], if he survives me.
SIXTH: All the rest and remainder of my property both real and personal I leave equally to the following persons who survive me: [list of nine named beneficiaries including respondent]" (emphases added).
The provisions in both articles purport to direct the disposition of decedent's "personal property." Although facially clear and unambiguous when read independently, the articles are incapable of being read together and, as written, they cannot be reconciled. To that end, if the bequest under article 5 is interpreted as unqualified, as respondent urges, he inherits all of decedent's personal property, leaving no residuary estate of personal property for the nine beneficiaries (including himself) to inherit under article 6. If, however, article 5 is interpreted as bequesting decedent's tangible personal property to respondent, consisting of most of the contents of decedent's home, which was also bequeathed to him, then the intangible personal property in decedent's estate, comprised of cash and cash equivalents and stock valued in excess of $1.3 million, is divided among the nine named beneficiaries under article 6. Given this ambiguity that arises in attempting to read articles 5 and 6 together, we agree with Surrogate's Court that decedent's intent is not clear and there is an ambiguity in the will, and, thus, the resort to extrinsic proof was proper and a hearing was warranted (see Matter of Phillips, 101 AD3d 1706, 1708 [2012], lv dismissed 21 NY3d 909 [2013]; Matter of McCabe, 269 AD2d 727, 728-729 [2000]; Matter of Morrison, 270 App Div 318, 320 [1946]).
"[I]n construing a will[,] the court's foremost objective is ascertainment of decedent's intent, and, concomitantly, effectuating the will's purpose" (Matter of Carmer, 71 NY2d 781, 785 [1988]; see Matter of Prevratil, 121 AD3d 137, 146 [2014]; Matter of Scale, 38 AD3d 983, 984 [2007]). Decedent's "intent is to be ascertained 'not from a single word or phrase, but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed'" (Matter of Bieley, 91 NY2d 520, 525 [1998] [emphasis omitted], quoting Matter of Fabbri, 2 NY2d 236, 240 [1957]; see Matter of McCabe, 269 AD2d at 728).
At the hearing, Lewis testified that he met with decedent on many occasions, discussing with and counseling her on matters concerning the administration of her estate. Lewis was unequivocal in his testimony that it was decedent's intent to divide her residuary estate, including her remaining personal property, into nine equal shares, intending to distribute that property equally to the individuals named in article 6. In Lewis' opinion, respondent's interpretation that he inherited all of decedent's personal property would likely "crush" decedent. In support of Lewis' opinion, petitioner submitted 14 documents into evidence, including the notes prepared by Lewis, interoffice emails, drafts of decedent's will and letters written to decedent that documented Lewis' consultations with her. In contrast, respondent testified to his belief that it was decedent's intention to leave her entire residuary estate of personal property to him because he was her "favorite" and he had been financially supported by her in the past.
We agree with Surrogate's Court that a reading of the will in its entirety established decedent's intent to distribute to respondent her home and tangible personal property, consisting of her home furnishings, under articles 2 and 5, and to then bequeath the residuary of her personal (and real) property, consisting of her financial holdings, to the nine beneficiaries named in article 6, including respondent. Under the will, after payment of expenses (article 1), decedent bequeathed her home to respondent, allowing her niece to reside there for two years (article 2). Decedent gave a $10,000 bequest to seven specified beneficiaries (article 3), and bequeathed to the niece two pieces of furniture from her home (article 4). Decedent's bequest to respondent in article 5 of her "personal property" clearly refers to the tangible personal property in her home, except for the two pieces of furniture given to the niece in the preceding article. The bequest in article 6 of the "rest and remainder" of her real and personal property to the nine beneficiaries, including respondent and her niece, indicated her intent to distribute the remaining intangible property, consisting of her financial holdings worth in excess of $1.3 million, to those nine beneficiaries.
To interpret article 5 as respondent urges would effectively divest the other eight residuary beneficiaries named in article 6 of their share of decedent's intangible personal property, namely her accumulated financial holdings, as there would be no personal property in the residuary estate to distribute. Thus, we agree with Surrogate's Court that, as decedent bequeathed her home to respondent in article 2, it follows that she intended in article 5 to award him only the home's furnishings, subject to the specific bequest to her niece in article 4, and not the intangible personal property in article 6. Given the foregoing, the court properly dismissed respondent's challenge to the accounting of the estate and approved the final accounting as originally submitted.
Garry, P.J., Mulvey, Devine and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Decedent's home is the only real property reflected in the will or accounting.

Footnote 2: Respondent's objections to the accounting were based on his interpretation that the phrase "personal property" in article 5 meant that, after disposition of specific bequests in the will, the entire remainder of personal property was left to him, notwithstanding the bequests in article 6.