LaBarge v MJB Lake LLC (2023 NY Slip Op 05301)

LaBarge v MJB Lake LLC

2023 NY Slip Op 05301

Decided on October 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 19, 2023

CV-23-0096
[*1]Peggy Jean LaBarge, Appellant,
v
MJB Lake LLC et al., Respondents.

Calendar Date:August 17, 2023

Before:Egan Jr., J.P., Ceresia, Fisher and McShan, JJ.

Young/Sommer LLC, Albany (J. Michael Naughton of counsel), for appellant.
Whiteman Osterman & Hanna LLP, Albany (Anna V. Seitelman of counsel), for respondents.

Egan Jr., J.P.
Appeal from an order of the Supreme Court (Glen T. Bruening, J.), entered December 20, 2022 in Essex County, which, among other things, granted defendants' motions for summary judgment dismissing plaintiff's claims.
Charles W. McCutchen was the owner of several parcels of land totaling 144 acres, situated on or near Lake Placid in the Town of North Elba, Essex County, collectively known as Camp Asulykit (hereinafter the camp). As the camp is not accessible by road, McCutchen also owned a lakefront lot to the south with vehicular access, a parking area and a dock from which he and his guests could reach the camp via boat (hereinafter the dock lot). Among the numerous structures at the camp is a lakefront cottage, and McCutchen allowed plaintiff, a friend, to use the cottage and to store and launch her kayak from the dock lot to reach it.[FN1] He also wanted plaintiff to be able to use the cottage after his death and, as such, executed a will in 2018 in which he directed that the camp and the dock lot be sold after his death "subject to a life estate for [plaintiff] in the lake[ ]front cottage . . . , along with the use of the informal canoe landing 75 feet farther to the west," at the camp. The will made no provision for plaintiff's use of the dock lot.
McCutchen died in September 2020. In September 2021, the executors of his estate, Edward Love and Jack McClow, entered into a contract to sell the camp and dock lot to defendant William R. Berkley for $8,200,000. The contract was contingent, among other things, upon plaintiff's written agreement to a relocation of the cottage. No written agreement was executed and, in November 2021, Whiteface Resort Holdings, LLC commenced this action to, among other things, enjoin the sale upon the ground that it had a right of first refusal. The executors, Berkley and plaintiff were named defendants, and plaintiff asserted cross-claims seeking a declaration as to the extent of her life estate and injunctive relief barring interference with it. Plaintiff also moved for a preliminary injunction by order to show cause and, in May 2022, Supreme Court granted a temporary restraining order to prevent interference with her use of the dock lot.
The same month, a stipulation was executed in which Whiteface's claims were discontinued, plaintiff's cross-claims were severed, and the caption was amended to reflect that the remaining claims were those asserted by plaintiff against the executors and Berkley. Plaintiff then served an amended pleading alleging that she had either an implied easement or an easement by prescription entitling her to use the dock lot and seeking related declaratory and injunctive relief. The executors and Berkley (hereinafter collectively referred to as defendants) separately moved, in relevant part, for summary judgment dismissing the claims.[FN2] Plaintiff opposed the motions and cross-moved for summary judgment. Supreme Court granted defendants' motions and denied plaintiff's cross-motion insofar as they [*2]sought summary judgment, resulting in the dismissal of plaintiff's claims. As a result, Supreme Court also denied plaintiff's motion for a preliminary injunction and vacated the temporary restraining order. Plaintiff appeals and argues that, at a minimum, questions of fact exist regarding her easement claims and that a preliminary injunction should therefore have been granted.
We disagree and affirm. "[A]n implied easement will arise upon severance of ownership when, during the unity of title, an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another part, which servitude at the time of severance is in use and is reasonably necessary for the fair enjoyment of the other part of the estate" (Freeman v Walther, 110 AD3d 1312, 1315 [3d Dept 2013] [internal quotation marks and citations omitted]; see Bekkering v Christiana, 180 AD3d 1276, 1278 [3d Dept 2020]; Lew Beach Co. v Carlson, 77 AD3d 1127, 1130 [3d Dept 2010]). The need for the easement to be "reasonably necessary" does not require that it be an "absolute necessity" to enjoy the property interest conveyed; nevertheless, more than "mere convenience" is needed (Sadowski v Taylor, 56 AD3d 991, 993 [3d Dept 2008] [internal quotation marks and citation omitted]; see Freeman v Walther, 110 AD3d at 1316; Buck v Allied Chem. Corp., 77 AD2d 782, 783 [4th Dept 1980]). Further, because "[w]hether an easement by implication has been created ultimately depends on the intentions of the grantor at the time of the original conveyance" (Palma v Mastroianni, 276 AD2d 894, 894 [3d Dept 2000]; see Real Property Law § 240 [3]; Tarolli v Westvale Genesee, 6 NY2d 32, 34 [1959]; Coccio v Parisi, 151 AD2d 817, 818 [3d Dept 1989]), one "will not be created where the intention of the parties at the time of conveyance indicates otherwise" (Oliphant v McCarthy, 208 AD2d 1079, 1080 [3d Dept 1994]; see Corrarino v Byrnes, 43 AD3d 421, 425 [2d Dept 2007]).
Here, it is undisputed that McCutchen permitted plaintiff to use the cottage and the dock lot during his lifetime, as well as that he wanted her to be able to use the cottage after his death. His will explicitly directed that the camp and dock lot were to be sold together, however, and made no provision for plaintiff's continued use of those properties beyond granting "a life estate . . . in the lake[ ]front cottage . . . , along with the use of the informal canoe landing" at the camp. This language reflected that McCutchen intended to afford plaintiff a right to use the cottage, but not the dock lot, under a new owner, and that unambiguous language was "the best indicator of the testator's intent" (Matter of Scale, 38 AD3d 983, 985 [3d Dept 2007]; see Matter of Dawe, 179 AD3d 1182, 1184 [3d Dept 2020]). Defendants further came forward with proof that the use of the dock lot would be nothing more than a convenience to plaintiff because she could reach the cottage via boat by other means, pointing out that she, among other things[*3], owned a home with deeded access rights to Lake Placid and had access to two public boat launches on the lake.[FN3] Hence, assuming, without deciding, that the grant of a life estate to plaintiff sufficiently severed ownership between the various parcels at issue to make an easement by implication over the dock lot a possibility, defendants satisfied their initial burden of showing that one was not intended and that one would not, in any event, be warranted because it was not reasonably necessary to plaintiff's enjoyment of her life estate (see Bonadio v Bonadio, 200 AD3d 747, 749 [2d Dept 2021]; Mau v Schusler, 124 AD3d 1292, 1294 [4th Dept 2015]).
Plaintiff attempted to raise a material question of fact in response by documenting her extensive involvement with, and use of, the dock lot during McCutchen's lifetime — suggesting, in the process, that McCutchen meant to provide for her continued use of the dock lot when he was preparing his will but had simply neglected to do so — and averring that her use of the dock lot was reasonably necessary to reach the cottage because it would be too difficult for her to launch a kayak from the other access points that were available to her. With regard to the first point, as "the language of the will was unambiguous" in solely providing plaintiff with a life estate for the use of the cottage and the informal landing near it, extrinsic evidence cannot be used to vary its terms and also imply the grant of a right to use the dock lot (Matter of Dawe, 179 AD3d at 1184; see Matter of Cord, 58 NY2d 539, 544 [1983]). As for the second point, plaintiff asserts that it would be physically difficult for her to carry and load a kayak at the alternative access points and that it would be potentially dangerous to make the longer journey from the public boat launches to the cottage by kayak. Even she acknowledged that she will soon need to begin using a motorboat to reach the cottage no matter where she launches due to her age and declining physical condition, however, and she gave no reason to believe that the need to load a boat with supplies more frequently constituted more than an inconvenience. Supreme Court was therefore correct in determining that plaintiff failed to raise a material question of fact as to the existence of an easement by implication and that defendants were entitled to summary judgment dismissing that claim (see Mau v Schusler, 124 AD3d at 1295).
As for plaintiff's claim of a prescriptive easement on the dock lot, such requires proof "that the use of the easement was open, notorious, hostile and continuous for a period of 10 years" (Gulati v O'Leary, 125 AD3d 1231, 1233 [3d Dept 2015]; see Mastbeth v Shiel, 218 AD3d 987, 988 [3d Dept 2023]). There is no dispute that plaintiff used the dock lot to access the camp in an open and notorious manner for the requisite period and, while that fact would ordinarily give rise to a presumption of hostility, such is not the case "where there is a close and cooperative [*4]relationship between the record owner and the person claiming [use] through adverse possession" (Estate of Becker v Murtagh, 19 NY3d 75, 82 [2012]; see Bekkering v Christiana, 180 AD3d at 1279-1280; Weinberg v Shafler, 68 AD2d 944, 945 [3d Dept 1979], affd 50 NY2d 876 [1980]). Defendants demonstrated that such a relationship existed between plaintiff and McCutchen and, indeed, plaintiff acknowledged that she was a "close personal friend" of McCutchen who used and maintained the dock lot with his knowledge and had his "implied" permission to do so. Plaintiff was accordingly obliged to come forward with proof indicating that her use of the dock lot was adverse to McCutchen and, having failed to do so, Supreme Court correctly determined that her claim for a prescriptive easement must fail (see Millington v Kenny & Dittrich Amherst, LLC, 124 AD3d 1108, 1110 [3d Dept 2015]).
Finally, we are unpersuaded by plaintiff's argument that summary judgment was premature pending further discovery. To obtain that relief, "plaintiff was obliged to provide some evidentiary basis for [her] claim that further discovery would yield material evidence and also 'demonstrate how further discovery might reveal material facts in the movant's exclusive knowledge' " (Rochester Linoleum & Carpet Ctr., Inc. v Cassin, 61 AD3d 1201, 1202 [3d Dept 2009], quoting Schofield v Trustees of Union Coll. in Town of Schenectady, 267 AD2d 651, 652 [3d Dept 1999]; see CPLR 3212 [f]). Plaintiff claimed that discovery might uncover proof regarding McCutchen's purported intent to grant her the use of the dock lot following his death, defendants' claims of damage if she were allowed to do so, and particulars regarding the contract in which Berkley agreed to buy the camp and dock lot. Assuming, without deciding, that plaintiff provided an evidentiary basis for believing that such evidence existed in defendants' exclusive possession, that proof is immaterial to the dispositive issues of whether she could obtain a right to use the dock lot despite the unambiguous language of McCutchen's will, whether an implied easement for the use of the dock lot was reasonably necessary to enjoy the life estate she was granted by that will, and whether her use of the dock lot had been permissive. Thus, as the discovery sought by plaintiff would "not lead to the production of material evidence," Supreme Court properly declined her request to deny defendants' motions so that it could occur (Porco v Lifetime Entertainment Servs, LLC., 195 AD3d 1335, 1337 [3d Dept 2021]).
As defendants were entitled to summary judgment dismissing the claims against them, plaintiff's contentions regarding the denial of her motion for a preliminary injunction are academic (see Camelot Assoc. Corp. v Camelot Design & Dev., 298 AD2d 799, 801 [3d Dept 2002]).
Ceresia, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The cottage is known as Miss Margaret's Cottage.
Footnote 2: The camp and dock lot were conveyed by McCutchen's estate to MJB Lake LLC — an entity owned and controlled by Berkley — after this appeal had been briefed and argued. Plaintiff thereafter successfully moved before this Court for an order directing that MJB Lake be substituted as a party defendant in place of the executors. As that entity had no involvement in either the motion practice before Supreme Court or this appeal, we will continue to refer to the executors as defendants to avoid unnecessary confusion.

Footnote 3: Defendants also suggested that plaintiff could use the lakefront facilities of a nearby resort, but provided no proof that she had the right to do so. Plaintiff averred in response that the resort's facilities were strictly for its guests, of whom she was not one, and that resort management had told her that they were not willing to make an exception for her.