OPINION OF THE COURT
Joseph S. Mattina, S.
This matter was brought before the court on a petition by W. Barry Mallon, Esq. for the judicial settlement of his account as successor trustee of the trust under paragraph 2 of article fifth of the will of Bertha E. Shehan and for a determination as to the validity, construction, and effect of such paragraph.
Bertha E. Shehan died February 28, 1947, leaving a will dated September 11, 1945, which was admitted to probate by this court on May 5, 1947. The decedent was survived by her sister, Mary Elizabeth Davis, her niece, Sarah Louise Bowden, and two children of her niece, Charles W. Bowden, III and Deborah B. Laury. After a small bequest to an employee, Ms. Shehan’s will leaves her personal effects to her sister and *906 niece and establishes a trust in her residence for their benefit. Article fifth divides the residuary estate into two equal parts, the first to be held in trust during the lives of Sarah Louise Bowden and her youngest child surviving at the decedent’s death. Income is to be paid first to Ms. Davis, then, on her death, to Ms. Bowden, and on her death to her surviving children and issue of deceased children, per stirpes. At the trust’s termination on the death of the survivor of Ms. Bow-den and her youngest child living at her aunt’s death, the principal is to be distributed outright to Ms. Davis, or if she is not then surviving, equally to the then surviving children of Ms. Bowden and surviving issue of her deceased children, with such issue to take their parent’s share.
Paragraph 2 of article fifth, which is at issue in this proceeding, provides as follows:
”2. The other of said one-half parts shall be held in trust for the benefit of my niece, sarah louise bowden, during her life to pay or apply for her benefit during the term of her natural life the income thereof. Upon the death of my niece, Sarah Louise Bowden, my Trustees shall divide the same into as many parts as there are children or issue of deceased children of Sarah Louise Bowden then surviving, the children of a deceased child of Sarah Louise Bowden to take their parent’s share. The Trustees shall designate each of said parts as a separate trust fund for the benefit of each child or child of a deceased child of Sarah Louise Bowden and shall pay over to or apply for the benefit of each of said beneficiaries during the term of life of each the income of their particular trust. Upon the death of each of said life tenants the Trustees shall pay over the balance of said fund to his or her surviving issue, per stirpes and not per capita. If said life tenant leaves no issue him surviving, then the principal of said fund shall be paid to the surviving children or issue of deceased children of Sarah Louise Bowden, per stirpes and not per capita.”
Two other provisions of the will are relevant to the issues before the court. Article thirteenth, in expressing the testatrix’s intention that the various trusts not be subject to the debts of their beneficiaries, designates them as spendthrift trusts. Article sixteenth provides that any property "not heretofore disposed of’ shall pass to the Church Home at 7th and Rhode Island Streets (now the Episcopal Church Home) to be held as the "H. R. and Bertha E. Shehan Fund,” to be used for such purposes as the Home’s officers and directors consider most advantageous.
*907 The death of Sarah Louise Bowden, on June 4, 1991, has occasioned this accounting and construction proceeding. Ms. Bowden is survived by three children, Deborah B. Laury, Charles W. Bowden, III, and Cecilly B. Sullivan, the latter born after Ms. Shehan’s death. Deborah Laury has no children, Charles Bowden has two children, and Cecilly Sullivan one child, a minor, who is represented by a guardian ad litem. Petitioner trustee, who, pursuant to the terms of article fifth, paragraph 2, must now divide the fund held for Ms. Bowden into separate trusts for her children, confronts the possibility that some or all of the trusts violate the Rule against Perpetuities because any one of the secondary life tenants could have been, and in fact, Ms. Sullivan is, a person not in being on the testatrix’s death. Petitioner therefore seeks a construction by this court to effectuate the testatrix’s intent by upholding the validity of all three trusts, or in the alternative, the two to be created for Deborah Laury and Charles Bowden, who were in being at Ms. Shehan’s death. Respondent Sullivan, along with the guardian ad litem for her minor child, argues for a construction determining all the trusts to be legal, while respondents Laury and Bowden urge the court, if it cannot see fit to uphold all three trusts, at least to validate their two. All of these parties maintain that the will reflects Ms. Shehan’s intent to benefit her closest relatives. Respondent Episcopal Church Home, in contrast, supported by the Attorney-General, claims that the entire trust fund under paragraph 2 is invalid because in violation of the Rule and therefore that fully one half of the residuary estate must pass to it under the terms of article sixteenth as property not heretofore disposed of.
It is well established that in a construction proceeding a court must seek to ascertain the intent of the testator. Such intent "must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.” (Matter of Fabbri, 2 NY2d 236, 240 [1957].) A construction presupposes some ambiguity, lack of clarity, or vagueness in the language of the instrument that gives rise to uncertainty about the testator’s wishes. We find no such ambiguity in the will before us. The language of paragraph 2 of article fifth is clear on its face, and evidences an intention on the part of the testatrix to benefit her niece during her lifetime with income from trust assets and, after her death, to hold the funds in further lifetime trusts for the niece’s children who survive their mother, or for issue of *908 predeceased children. The remainders are to be distributed on the respective life tenants’ deaths to their issue, per stirpes, or if they leave no issue, to the niece’s then surviving children or issue of deceased children, per stirpes. The trusts under paragraph 2 were purposely designed to benefit two, if not three, generations of Bertha Shehan’s relatives. Paragraph 2 contains no designated measuring lives for the trusts thereunder, in contrast to paragraph 1, which specifies that the lives of Sarah and her youngest child surviving at the testatrix’s death shall determine its duration.
Not only must a court in construing a will ascertain the testator’s intent, but it also must determine whether effectuating that intent would contravene the law. In the case before us, the principles of construction must therefore be applied in light of the public policy considerations which underlie the Rule against Perpetuities. As the Court of Appeals noted, quoting Gray, Rule against Perpetuities § 2a, rules governing restraints on alienation are " 'modes adopted by the common law for forwarding the circulation of property, which it is its policy to promote’.” (Carrier v Carrier, 226 NY 114, 122 [1919].) And, as this court itself stated some 40 years ago, "it should be borne in mind that the Rule against Perpetuities is not a canon of construction but a legal prohibition. Its purpose is not to determine intent but to prevent illegality. Indeed, when the Rule is applied, it defeats intent.” (In re Gohr’s Will, 112 NYS2d 236, 238 [Sur Ct, Erie County 1952], citing, inter alla, Matter of Maybaum, 296 NY 201 [1947]; Gray, Rule against Perpetuities § 629 [4th ed 1942].)
The version of the Rule against Perpetuities in effect at Bertha Shehan’s death and applicable in this proceeding traces its origins to the Revised Statutes of 1830. Real Property Law former § 42 and Personal Property Law former § 11 (as amended by L 1929, ch 229, §§ 16, 18, respectively) provided that the absolute power of alienation of real property and the absolute ownership of personal property could not be suspended, by any limitation or condition, for a period longer than two lives in being at the death of the testator. Every future estate that suspended the power of alienation beyond such permissible period was void in its creation. Case law before and after the statutory enactment interpreted the prohibition to apply to remoteness in vesting as well as suspension of the power of alienation. The Rule’s scope, consequently, was sweeping and its effect harsh. In the words of one commentary: "The rule under the New York statutes destroys *909 every contingent future interest, spend thrift trust or power which suspends the power of alienation beyond the continuance of two lives in being at the creation thereof, and all contingent future interests which will not certainly be resolved within the period, except that a contingent remainder in fee may be created on a prior remainder in fee to be determined within an additional minority.” (Note, The New York Rule Against Perpetuities, 22 Brook L Rev 70, 97 [1955].)
In 1960, the Law Revision Commission commented on the rigors of the two-life Rule: "The New York law with respect to the permissible period was unique in the stringency of the restrictions it imposed and in the complexities that developed as a result of the unreasonableness of these restrictions. Since the same period applied both to invalidate interests so created as to vest at too remote a time and to invalidate trusts so created as to endure beyond the permissible period, normal and unusual dispositions were frustrated or prevented.” (1960 Report of NY Law Rev Commn, 1960 NY Legis Doc No. 65, at 293.)
It is well settled that, in determining whether a disposition violates the Rule against Perpetuities, one must "look to what might have happened under the terms of the will rather than to what has actually happened since the death of the testator.” (Matter of Fischer, 307 NY 149, 157 [1954], citing, inter alla, Matter of Friend, 283 NY 200, 206, 208-209 [1940]; Matter of Durand, 250 NY 45, 53 [1928].) The Court of Appeals summarized this principle in Schettler v Smith: "[I]t is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every possible contingency, they will absolutely terminate at such period, or such estates will be held void.” (41 NY 328, 334-335 [1869].)
Applying this principle to the provisions of the will before us, we find that, viewed at the time of Bertha Shehan’s death, any one or all of the separate trusts to be established at Sarah Louise Bowden’s death could have had as life tenant a person (either a child of Sarah Louise Bowden, or a child of a deceased child of Sarah) who was not in being at the decedent’s death. The interests of the secondary life tenants are clearly contingent upon surviving Sarah. It was certainly possible that the two children of Sarah who survived the *910 testatrix might have predeceased their mother and that other children (or even issue of predeceased children), born after the testatrix’s death, could have been the life tenants of every one of the separate trusts. Thus, the absolute ownership of property could be suspended beyond two lives in being at the testatrix’s death. The paragraph also violates the prohibition against remoteness in vesting, since the remainders may not vest during the lives of two persons who were in being at the death of the testatrix, again because afterborn children or grandchildren may be the takers of the secondary life estates. Ms. Shehan’s attempt to have one half of her residuary estate held in trust for the life of her niece and, at her death, for the lives of each child of her niece or any children of a predeceased child, some or all of whom might not have been alive at the testatrix’s death, violates the Rule against Perpetuities. (Matter of Durand, 250 NY 45 [1928]; Matter of Colegrove, 221 NY 455 [1917]; Matter of Davison, 134 Misc 769 [Sur Ct, Kings County 1929], affd 230 App Div 867 [2d Dept 1930].)
This court is well aware that the more than 100-year history of the two-life Rule has been marked by the considerable confusion of draftsmen attempting to understand its complexities and conform testamentary instruments to its particularly harsh strictures, by a multitude of litigation generated by their errors and uncertainties, and by the resultant criticism of legal scholars, commentators, and law reformers. We are also not unmindful of the variety of judicial attempts to mitigate the Rule’s harshness. Such "methods of construction” as separability of trusts, excision of invalid provisions, acceleration of remainders, the natural term of the trust, and separable limitations, which have evolved over the years, have been discussed and analyzed in scholarly articles and Law Revision Commission reports. (See especially, 1960 Report of NY Law Rev Commn, 1960 NY Legis Doc No. 65 [G]; Note, Future Interests: Change in Permissible Period for Suspension of Power of Alienation in New York, 43 Cornell LQ 703 [1958]; Comment, Trusts: Unlawful Suspension of Power of Alienation, 32 NYU L Rev 1009 [1957]; Note, The New York Rule Against Perpetuities, 22 Brook L Rev 70 [1955]; Leach, Perpetuities in Perspective: Ending the Rule’s Reign of Terror, 65 Harv L Rev 721 [1952]; 1936 Report of NY Law Rev Commn, 1936 NY Legis Doc No. 65 [H].)
We have been hard pressed, however, in the course of our review of the Rule’s history, to find another case in which the plain language of the will so thoroughly frustrates any at *911 tempt at liberality of construction. There is no question that the testatrix’s intention was to benefit her closest relatives. With the exception of the small bequest to the employee and the reference in article sixteenth to the charity, every significant dispositive provision identifies her sister, niece, and niece’s descendants as the objects of her bounty. All the beneficiaries effectively concede that the trust at issue violates the Rule. They request, however, that the court not invalidate the trust but effectuate the testatrix’s intent by imputing language into the will setting forth the same measuring lives for the trust under paragraph 2 as are specified in paragraph 1. This is tantamount to the addition of a perpetuities savings clause. Respondent Sullivan suggests the following: "Notwithstanding the foregoing, any trust for the benefit of a life tenant who was not in being at my death shall, if not theretofore terminated, terminate on the death of the survivor of my niece, Sarah Louise Bowden, and her youngest child surviving at my death, and the trustees shall pay over the balance of said funds to the life tenant.”
This amounts to far more than the imputation of a word or phrase, the correction of an obvious error, or the clarification of an ambiguity. If the testatrix had wanted the trusts under paragraph 2 to end within this defined period, she would have reiterated the earlier identification of measuring lives in this paragraph, inserted such a separate savings clause herself, or simply provided that the entire residue pass according to the terms set forth in paragraph 1. The beneficiaries argue that the presence of such specific measuring language in trust 1 is an indication that it was intended to be included in trust 2 and was inadvertently omitted. We take the existence of two distinct trusts under article fifth rather as evidence of an intent to dispose of the two halves of the estate in different ways. The chief distinction between the two is that the second portion is to be held in trust for the lives of two full generations of the testatrix’s relatives. Ms. Shehan did not wish such property to be distributed outright to her niece’s children or grandchildren (in the case of a share held for issue of a predeceased child) during their lifetimes, as would happen under the terms of paragraph 1 should the measuring lives end before the life beneficiaries’ deaths. It is this intention, to benefit her relatives in a way that runs counter to the law and policy of this State, that gives rise to the invalidity of the dispositions under paragraph 2.
The beneficiaries advance no sound legal basis, other than *912 the general constructional principles about ascertaining and effectuating testamentary intent, to support the interpolation of such extensive language. Indeed, so substantial is the change occasioned thereby that a provision for the disposition of trust assets on the new termination date must also be added. But the distribution of principal to the income beneficiary if the measuring lives end before the death of such life tenant is not in accord with Ms. Shehan’s intent as reflected in the plain language of paragraph 2.
As an alternative remedy, several of the respondents urge that we uphold the validity of two of the three trusts, because their secondary life tenants were in fact alive at the testatrix’s death. We are aware that some courts have liberally construed wills to preserve testamentary dispositions that, viewed as of the date of the proceeding, would pass to beneficiaries who were in fact in being at the testator’s death. To support such construction, courts have invoked the doctrine of separable trusts, which has been called "[o]ne of the most unpredictable of the constructional tools used in New York courts under the two lives period,” and the doctrine of excision of invalid portions. (Note, Future Interests: Change in Permissible Period for Suspension of Power of Alienation in New York, 43 Cornell LQ 703, 707 [1958].) For a number of reasons, we find such liberal constructions of no utility or applicability in the instant case. First, we are compelled to adhere to the settled principle, enunciated earlier, that in order to determine whether a disposition violates the Rule, it must be analyzed at the time of the testator’s death. We cannot agree that interests to be held in trust, even in concededly separate trusts, are valid simply because, viewed as of one point in time (say, the death of the primary life tenant), a particular contingency has occurred — i.e., the trusts’ secondary life tenants are persons who were alive at the testatrix’s death. Viewed at the time of Ms. Shehan’s death, any one or all of the separate trusts could, under a number of different scenarios, have been established for persons not in being at her death.
The Court of Appeals dealt with a situation analogous to the one before us in Matter of Lyons (271 NY 204 [1936]). The testatrix divided her residuary estate into four parts, one to pass outright to her son, a second to be held in trust for two named grandchildren, and the other two to be held in separate trusts for the lives of two children. Upon the death of each child, there were to be separate lifetime trusts for *913 grandchildren and descendants of predeceased grandchildren, with the remainders to pass to the secondary life tenants’ descendants. The Court upheld the invalidation of the secondary life estates because of the possibility their takers would be persons not in being: "Invalidity inheres only in the attempted disposition of the two shares allotted to the other two children and their descendants after the death of the life beneficiaries. There the trust might continue during the life of a child not in being at the time of the death of the testatrix. The courts below have correctly held that the attempted creation of secondary life estates in two shares of the residuary estate of the testatrix after the termination of the primary life estates is invalid. To that extent, then, the testamentary scheme of the will cannot be carried out, and at least the remainder in two shares of the estate, after the death of the life beneficiaries, must pass as in case of intestacy to the four children of the testatrix.” (Matter of Lyons, 271 NY 204, 208.)
The language of the will before us forbids a construction discriminating against one part of the testatrix’s family, since it makes clear that her purpose in the creation of the separate trusts was that the funds continue to be held for the lives of her grandnieces and grandnephews or even great-grandnieces and great-grandnephews, whether or not they were alive at her death. She did not specify that any such trust terminate within two lives in being at her death. She did not mention her niece’s children separately by name, treating them instead as a class. We have only to look at trust 1 to be reminded of the very different provisions, and potentially far longer duration, of trust 2. The testatrix’s intent to treat equally all the secondary life tenants is also most apparent from the provisions of both paragraphs of article fifth. To allow the creation of trusts for only two of such children would be directly contrary to her desires and result in a distortion of her overall plan. We do not find sufficient ambiguity in the instrument to permit the segregation and excision of the one allegedly invalid trust or to warrant the liberal interpretation of language defining the life tenants as those relatives surviving at the testatrix’s death, thus preventing only that trust’s creation.
Most important in our rejection of such "constructions” is our adherence to the established principle that courts should not rewrite testators’ wills. See Matter of Durand (250 NY 45, 55 [1928]), in which the Court of Appeals asserted that "courts cannot reconstruct wills in accordance with the near intention *914 of the maker,” and Matter of Horner (237 NY 489, 502 [1924]), in which the Court refused to uphold the portion of a trust for a grandchild who was in being at the testator’s death on the grounds that it could not do so "without destroying the testator’s will, and making a new one of our own.” We refused to rewrite a disposition 40 years ago when construing a will that- violated the two-life Rule. (In re Gohr’s Will, 112 NYS2d 236 [Sur Ct, Erie County 1952], supra.) In a case decided under the two lives version of the Rule and involving the appointment of trust assets on the primary life beneficiary’s death in further trust for a secondary life beneficiary not in being at the testator’s death, the Appellate Division, Fourth Department, rejected appellant’s argument that it should " 'rewrite’ the purported disposition to conform to the legal limit of the suspension of the power of alienation.” (Matter of Kellogg, 35 AD2d 145, 148.) The Court said, "We find no authority for the 'rewriting’ and 'wait-and-see’ approaches urged by appellants as provided by EPTL 9-1.2 and 9-1.3, since this case is not one in which an age contingency may be reduced to 21 years in duration to validate an otherwise invalid trust. (See Matter of Shaul, 58 Misc 2d 967.)” (Matter of Kellogg, 35 AD2d 145, 148 [4th Dept 1970], lv denied 28 NY2d 481 [1971].) As the Court also noted: "Certain it is that if the Legislature had sought to invalidate such trusts only for the period that might otherwise exceed a permissible period in gross, they could have so done and have rewritten the prior statutory and case law in this regard” (supra). The same Court in a later case declined to condone "an extensive rewriting of [an] option agreement pursuant to EPTL 9-1.3 so as to make it conform to the permissible period,” terming it "a process specifically condemned in Matter of Kellogg (35 AD2d 145, 148).” (Buffalo Seminary v McCarthy, 86 AD2d 435, 446 [4th Dept 1982], affd 58 NY2d 867 [1983].)
For all of these reasons, we find the separate trusts to be established for the children of the testatrix’s niece under paragraph 2 void in their creation.
We now turn to the disposition of trust principal and income accumulated since Sarah Louise Bowden’s death. Because we hold the separate trusts void at their creation, there is no question that the constructional device of acceleration of remainders, which typically follows excision, is applicable here. Because the trust assets pass, on the death of each secondary life tenant, to a class (then surviving issue of a child of Sarah, or if none, surviving children or issue of *915 deceased children of Sarah) whose membership is not ascertainable until the termination of the preceding life estate, the remainders are contingent. It is well established that contingent remainders cannot be accelerated. (Matter of Fischer, 307 NY 149 [1954], supra; Matter of Wolfsohn, 40 AD2d 273, 276 [4th Dept 1973], lv denied 32 NY2d 610 [1973].)
EPTL 3-3.4, which provides that, where the antilapse statute does not apply, partly ineffective testamentary dispositions to two or more residuary beneficiaries pass to the remaining residuary beneficiaries, is not germane to the instant case because specifically limited to dispositions ineffective "as of the date of the testator’s death,” and is, in any event, controlling only if the will makes no alternate disposition. Thus, an interest that does not become ineffective until many years after the testatrix’s 1947 death remains subject to the common-law rule, rather than to the statute, which took effect in 1967. At common law, a failure of a bequest of part of the residue passed by intestacy and the balance of the residuary estate was not augmented by a " 'residue of a residue’ ”. (Wright v Wright, 225 NY 329, 340 [1919].) In the case before us, however, the plain language of the will once more controls. The testatrix has specifically provided, under article sixteenth, for the distribution of "any property, whether real or personal and wherever situate not heretofore disposed of’ to the Church Home, now the Episcopal Church Home. Some of the beneficiaries argue that this article was meant to come into play only if no blood relatives of the decedent were surviving at some intermediate time, say, the termination of Sarah Louise Bowden’s life estate. It was not so restrictively worded by the draftsman. As we have stated throughout, we must adhere to the language of the will and the intent reflected therein. The ineffective disposition of trust assets under paragraph 2 of article fifth constitutes property "not heretofore disposed of’ and must pass to the Episcopal Church Home, to be used by the charity as provided under article
SIXTEENTH.
This court is not unsympathetic to the concerns of Ms. Shehan’s relatives, who had expected to benefit from her entire residuary estate and now must see half of it distributed to the charity. We have therefore gone to some lengths to explain the reasoning behind our decision. This was a case, ultimately, in which the particular stringencies and complexities of the two-life Rule and the plain and unambiguous *916 language of the instrument, combined, afforded no latitude in interpretation or construction.
We therefore hold that the disposition under paragraph 2 of article fifth of the balance of trust assets in separate trusts on the death of Sarah Louise Bowden is invalid because in violation of the Rule against Perpetuities, and that such assets must be distributed to the Episcopal Church Home pursuant to the terms of article sixteenth.