OPINION OF THE COURT
Joseph S. Mattina, S.
This matter was brought before the court by the petition of Herbert F. Harvey for the judicial settlement of his accounts *894 as trustee of two charitable remainder annuity trusts. Both trusts were created prior to her April 5, 1995 death by Mildred K. Campbell, the first by agreement dated December 21, 1992 for the benefit of the Buffalo State College Foundation, Inc., the other by agreement dated December 9, 1993 for the benefit of the Salvation Army. The trusts were funded with $70,000 in cash and $83,000 in securities, respectively. Herbert W. Vogelsang and Clifford G. Vogelsang (hereinafter petitioners), sons of Mrs. Campbell, in their individual capacities and as executors of their mother’s estate, did not file objections to the trustee’s accounts but interposed an answer and cross petition seeking reformation of both trusts. Subsequently, the Buffalo State College Foundation, Inc. (hereinafter the College Foundation) and the Salvation Army, Inc. (hereinafter the Salvation Army), joined by the New York State Attorney- General (hereinafter, collectively, respondents), moved for dismissal of the answer and cross petition and in the alternative for summary judgment. After hearing oral arguments and requesting written submissions from the parties, we reserved decision. Because there were no objections, the trustee’s accounts were judicially settled prior to this court’s determination of the reformation issues.
Mildred Campbell left a will dated January 26, 1990, which was duly admitted to probate by this court on May 4, 1995. Letters testamentary were issued to the petitioners on that date. Under Article third of her will, the decedent declines to exercise a power of appointment over trust assets given her by the will of her husband, Herbert J. Vogelsang, who died in 1956. According to the terms of her husband’s will, the remainder of that trust therefore passes on her death to her sons, the petitioners herein. Article fourth of the decedent’s will contains several charitable bequests: $500 each to the Erie County League of Women Voters and to the American Association of University Women, and $100,000 each to the Salvation Army and to the College Foundation.
The final paragraph of Article fourth adds a qualification to these substantial bequests: "As aforementioned, if I should make a gift subsequent to the execution of this Will, specifically noting at the time' that it is in lieu of the bequest herein to either or both of the beneficiaries named at 'A’, and 'B’ of this Article fourth, which gift is either outright or by means of a trust to which I have also transferred property, or by means of a conveyance of property subject to a life estate, then and only in that event, the bequest herein to such beneficiary, or beneficiaries, shall lapse and be of no force and effect.”
*895 Pursuant to Article fifth of her will, the decedent’s residuary estate is to be distributed in three equal shares to her two sons, the petitioners, and to her stepson, Stuart Walker. The share for Herbert Vogelsang is to be held in trust for his lifetime, with Clifford Vogelsang as trustee. It should be noted that Clifford Vogelsang has renounced his own share of the residue.
The petitioners request that the court reform the two trust agreements by supplying language to signify the decedent’s alleged intent that the trust gifts were to supersede the testamentary bequests to the same beneficiaries. Such language is concededly lacking in the documents themselves and arguably required by the will. In the alternative, the petitioners maintain that the last paragraph of Article fourth of the will should be construed, together with the trusts, to permit oral notification by the decedent that the trust gifts were meant to replace those under the will. They further argue that such notification was given. If such reformation or construction were to be granted, the bequests to the two charities under Article fourth of the will would lapse and pass as part of the decedent’s residuary estate to the petitioners and their stepbrother.
The respondents argue, in the main, that the petitioners seek something that New York law will not permit the court to grant: "a new written testamentary direction changing the beneficiary of a bequest in an existing will, based on some supposed later oral statements of the testator” (outline of points for oral argument, at 2). They move for dismissal on a number of grounds both procedural and substantive, and in the alternative, because there are, they maintain, no triable issues of fact, for summary judgment.
A motion for summary judgment must be granted "if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party * * * the motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact” (CPLR 3212 [b]).
A court will not grant the motion if it has any doubt as to the existence of a material and triable issue of fact, or even if it finds the issue "arguable” (Falk v Goodman, 7 NY2d 87 [1959]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]). Accordingly, courts consider the evidence in a light most favorable to the party against whom the motion is *896 brought. They typically require from that party, however, an affirmative evidentiary showing. "Bald conclusory, assertions, even if believable, are not enough” to defeat the motion (Kramer v Harris, 9 AD2d 282, 283 [1st Dept 1959]). And, a party’s introduction of evidence inadmissible at trial or otherwise incompetent, if it is clear that he can bring forth no additional proof at trial, will not preclude granting the motion (Lombardi v First Natl. Bank, 23 AD2d 713 [3d Dept 1965]).
In the case before us, we do not find there to be facts at issue which would require a hearing. Even if we view the affidavits submitted by the petitioners in a light most favorable to them, we find their evidence insufficient to support the reformation they seek. We note that the statements contained in the affidavit submitted by Herbert Vogelsang, though they may be used to oppose a motion for summary judgment, would be inadmissible in a construction or reformation proceeding by reason of the Dead Man’s Statute. The remaining affidavits are of such a general and conclusory nature as to be of little utility. The petitioners cannot prevail as a matter of law.
As in a construction proceeding, a court seeks in a reformation to ascertain and effectuate the intent of the testator (Matter of Fabbri, 2 NY2d 236 [1957]). A reformation, as it is most typically undertaken in Surrogate’s Court, is an approved rewriting of a testamentary instrument in order to obtain, usually, some tax benefit such as a charitable or marital deduction, or the minimization of generation-skipping tax, intended by the testator or grantor, but not achieved in the instrument as drafted. In several recent reformations we have undertaken, including Matter of Barzycki (decided May 13, 1993) and Matter of Kowalewski (decided June 4, 1993), the tax benefits to the estates have been manifest and substantial: a savings of about $250,000 and almost $350,000 in estate taxes, respectively.
The case at bar represents an entirely different matter. As the respondents have, pointed out, the reformation proposed here would cause the bequests to pass away from the charities and into the residue and result in the loss of the charitable deduction. It would thus actually increase the estate taxes by almost $114,000. Fully 57% of the $200,000 lapsed charitable bequests would be consumed by Federal and State taxes. Such a result is wholly at odds with the presumption on which most such reformations are based: that the testator intended to minimize taxes (see, for instance, Matter of Kander, 115 Misc 2d 386 [Sur Ct, Westchester County 1982]; Matter of Rayvid, 88 *897 Misc 2d 372 [Sur Ct, Queens County 1976]; Matter of Stalp, 79 Misc 2d 412 [Sur Ct, Kings County 1974]).
More troubling, however, is that by depriving the charities of $200,000, the petitioners will themselves benefit. That benefit, however, is comparatively modest (less than $30,000 each for Herbert Vogelsang, for the issue collectively of Clifford Vogelsang, who renounced his share, and for Stuart Walker). The petitioners’ pursuit of such relatively minimal gain to the considerable detriment of worthy local charities is surprising in light of the fact that they are amply provided for as primary beneficiaries of their mother’s more than $3 million estate and receive the substantial remainder of their father’s trust on their mother’s death. But this court finds most troubling the disclosure that the petitioners, as executors of the estate, had, about four months prior to bringing this proceeding, taken a charitable deduction on the estate tax returns for (and hence admitted the validity of) the testamentary bequests they now seek to have declared lapsed.
The petitioners specifically ground their request for reformation on the theory of mutual mistake. A court can reform a document of a contractual nature when it determines that the signed writing, unknown to either of the parties, did not accurately embody the oral agreement previously reached (Chimart Assocs. v Paul, 66 NY2d 570 [1986]). "[T]he mistake shown 'must be one made by both parties to the agreement so that the intentions of neither are expressed in it’ ” (Amend v Hurley, 293 NY 587, 595 [1944], quoting Salomon v North British & Mercantile Ins. Co., 215 NY 214, 219 [1915]). In Chimart, the Court of Appeals noted that "there is a 'heavy presumption that a deliberately prepared and executed written instrument manifests] the true intention of the parties’ (Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219 * * *), and a correspondingly high order of evidence is required to overcome that presumption” (Chimart Assocs. v Paul, supra, at 574). On previous occasions, the Court has characterized the necessary proof as "evidence of the clearest and most satisfactory character” (Porter v Commercial Cas. Ins. Co., 292 NY 176, 181 [1944]) and proof of "the most substantial and convincing character” (Christopher & Tenth St. R. R. Co. v Twenty-Third St. Ry. Co., 149 NY 51, 58 [1896]), and has refused to grant the requested reformation " 'whenever the evidence is loose, equivocal or contradictory’ ” (Southard v Curley, 134 NY 148, 151 [1892]).
We note that the decedent in the case before us was a wealthy and prominent member of the community. She cannot *898 be considered to have been inexperienced in financial matters, and her wealth gave her access to the best legal and financial advice. The three documents in question were prepared by experienced professionals. The presumption that they accurately reflect her intentions is a strong one.
We do not find that the petitioners have advanced sufficient proof to prevail on the mutual mistake theory. It is true that an inter vivos trust, such as the two at issue here, is an agreement or contract between its creator (grantor) and the trustee, whereby the grantor transfers assets to the trustee, who assumes legal title. The trustee agrees to invest, manage, and distribute the trust funds pursuant to the terms set forth in the written agreement for the benefit of certain beneficiaries. The grantor may retain some rights, such as the right to receive the income or the right to revoke the trust. In the case before us, the parties to each agreement are the decedent, as grantor, and Herbert F. Harvey, as trustee. But the petitioners are unable to show mistake on the part of both the grantor and the trustee, such that their intentions are not accurately reflected in the trusts as drafted. They have put forth no evidence to indicate that the trustee had an understanding of the terms by which he would act that differed from their embodiment in the executed agreements. Conspicuous by its absence in their offer of proof is any statement by the trustee. Such an omission is fatal to the request for relief on the grounds of mutual mistake. But we question the applicability of mutual mistake to the present circumstances in any event. The dispositive provisions of a trust, which are at issue here, represent something more significant than a contract between two parties as to their rights and obligations. Because, upon the grantor’s death, the trust agreement functions as a will substitute or will equivalent, it becomes, at that point, primarily a reflection of the intention of one person, the testatrix/ grantor, concerning the disposition of her property. It is the testatrix/grantor’s intention that is of signal importance in this proceeding.
The affidavits appended by the petitioners, from petitioner Herbert Vogelsang himself, and from the decedent’s attorney and accountant, which are carefully crafted but very general and conclusory statements of belief that the decedent intended one or both of the trust gifts to be substitutional, appear more indicative of a mistake on the part of the grantor or of draftsman error than of mutual mistake. Indeed, in their second responding memorandum of law, the petitioners seem to be *899 advancing some such theory. There are no allegations by petitioners, however, of the kind of fraud or misrepresentation on the part of one of the parties that courts have required to reform an agreement on the grounds of unilateral mistake (see, for instance, Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77 [1970]). Although some courts have reformed various types of agreements and documents on the basis of scrivener’s error, they have required a high order of proof to do so (see, Vance Metal Fabricators v Widell & Son, 50 AD2d 1062 [4th Dept 1975]). Here the proffered affidavits, including the one from the will’s draftsman, offer insufficient evidence of any error. In fact, the identity of the draftsman of the trust is not at all clear. There is no admission in the affidavit of the decedent’s attorney either that he prepared the trust agreements or that any of the documents contain mistakes. We comment on the introduction of extrinsic evidence in the form of the testimony of the draftsman and others infra.
We can find no persuasive evidence, in the documents themselves, in the accompanying affidavits, or in the background facts and circumstances, to warrant reformation in any sense of that term. On the contrary, many uncontroverted facts support the respondents’ argument that the decedent intended the trust gifts to be additional. For instance, the amounts the decedent placed in the trusts ($70,000 in cash and $83,000 in securities) differ substantially from the sizes of the testamentary bequests ($100,000 to each charity). Petitioners offer no rejoinder to the respondents’ assertion that the other lifetime donations made by the decedent to the same charities were relatively minor and do not come near to making up the difference between the will and trust amounts. Moreover, the stated purposes of the gifts to each charity are different under the will and the trust agreements. The testamentary bequest to the College Foundation is specifically designated "to provide quality education to minority individuals and groups attending Buffalo State College.” The trust agreement specifies that the principal of the trust shall pass on the donor’s death to the College Foundation to be held for the benefit of Buffalo State College as the Mildred K. Campbell Fund II, with income to be used to "enrich the lives of students attending the State University College at Buffalo especially in their use of Campbell Hall.” The gift to the Salvation Army under the will is earmarked for programs to "rehabilitate and assist women and their families directly or indirectly afflicted by drug and alcohol addictions.” The trust for the Salvation Army, upon the donor’s *900 death, is to be held as the Mildred K. Campbell Fund II, with the income to be used by the Salvation Army "to perform charitable works for the needy people of the City of Buffalo.” The denomination of each of the trust funds as the Campbell Fund II lends support to the argument that each of such funds was to be an addition to the initial fund established by the testamentary gift.
The petitioners, at least implicitly, also seek a construction of the decedent’s will, when they suggest that, read in conjunction with the trust agreements, the testamentary language reveals patent ambiguity. The locus of the alleged ambiguity is the phrase "specifically noting” in Article fourth, the will’s provision for the nullification of its charitable bequests by inter vivos gifts. The respondents claim that the will’s language is unclear as to whether the notification must be in writing, but submit that it should be construed to permit oral notification.
On these grounds also the petitioners cannot prevail, for a number of very important reasons. First, although we perceive in the paragraph in question a lack of clear direction as to the manner of notification, we do not find that such obscurity rises to the level of a latent ambiguity, which we and other courts have required to allow introduction of the extrinsic evidence on which the petitioners’ argument depends (Matter of Schermerhom, 31 NY2d 739 [1972]). That the trust agreements contain no provisions relating back to the qualification attached to the charitable gifts under the will does not constitute an ambiguity. The absence of such language can be taken as an indication of the decedent’s deliberate noncompliance with Article fourth’s directions and hence of her determination not to treat the trust gifts as substitutes for the testamentary bequests.
Even were we to construe "specifically noting” to mean that oral notification were permissible, however, the affidavits offered by the petitioners do not constitute proof that the decedent ever gave such notification. That is, they are devoid of any reference to specific statements made by the decedent at the time of the creation of the trust agreements that the trusts were meant to replace and nullify the testamentary bequests, such as the language of the will requires. Rather, they represent only the most conclusory indications of their makers’ own beliefs as to the decedent’s general intention.
Most important, the interpretation sought by the petitioners could not be given effect by this court. Construction is in actual *901 ity a two-step process. A court must first interpret the questioned language and then must determine whether it can effectuate that interpretation (see, Matter of Shehan, 157 Misc 2d 904 [1993]). Any determination of an intent by the decedent that oral notification would suifice could not be carried out because it would be contrary to the most fundamental principles of Anglo-American law, which have developed over the centuries to insure the certainty of testamentary dispositions.
In their oral argument and in the written outline provided to the court, the respondents very effectively lay out the manifold reasons why the requested reformation or construction violates the statutory and decisional law of this State. We find the resort to EPTL 2-1.5 (b), which deals with advance gifts, most compelling. An advancement, according to the statute, is "an irrevocable gift intended by the donor as an anticipatory distribution in complete or partial satisfaction of the interest of the donee in the donor’s estate, either as distributee in intestacy or as beneficiary under an existing will of the donor” (EPTL 2-1.5 [a]). The statute further provides that "(b) No advancement shall affect the distribution of the estate of the donor unless proved by a writing contemporaneous therewith signed by the donor evidencing his intention that the gift be treated as an advancement, or by the donee acknowledging that such was the intention” (EPTL 2-1.5 [b]).
The language of the final paragraph of Article fourth of the will raises the possibility that the decedent may, during her lifetime, make an advance gift to one or both of the charitable beneficiaries mentioned in paragraphs A and B. Such a lifetime gift, however, can have no effect on a testamentary bequest to the same donee unless it is made in compliance with EPTL 2-1.5. Neither trust agreement constitutes a "writing contemporaneous” with the gift "signed by the donor evidencing [her] intention that the gift be treated as an advancement” (EPTL 2-1.5 [b]). There is no language indicative of such intent in either trust. Nor does any other signed contemporaneous writing containing such a statement of intent exist. In the absence of a signed writing, therefore, the court is compelled to treat the gifts as additional, not substitutional. Indeed, the petitioners’ reformation request constitutes a tacit admission that the decedent did not comply with the statute, when it asks this court to add to the trust agreements the kind of language required by EPTL 2-1.5.
As the respondents note, this strong policy to insure the certainty and stability of testamentary transfers of wealth by *902 mandating that such transfers can be effectuated only by properly executed writings is manifest in numerous other statutes. EPTL 3-2.1, the present-day New York version of the Statute of Wills, sets forth the formal requirements that, except in the instance of nuncupative or holographic documents, all wills must be in writing and signed in accordance with certain prescribed formalities. Other sections of the EPTL reflect the overriding premise that modifications affecting testamentary dispositions must be in writing: EPTL 3-4.1 (partial revocation or alteration of a will can be accomplished only by another will or another writing executed with testamentary formalities); EPTL 13-2.1 (a) (contract to make a will unenforceable unless in writing). To accede to the petitioners’ request and invest oral statements, made years subsequent to the will’s execution, with the power to alter its provisions, would undermine or destroy these long-standing legal protections against mistake, misrepresentation, and deception.
To support the proposed reformation or construction, the petitioners ask the court to admit extrinsic evidence in the form of affidavits, one of which is from the draftsman of the decedent’s will. But this court and numerous others have steadfastly refused to allow the admission of extrinsic evidence to correct a mistake in an unambiguous will or alter, vary, or contradict its terms (Matter of Cord, 58 NY2d 539 [1983]; Dwight v Fancher, 245 NY 71 [1927]). In the words of the Third Department, "courts will not create a new will to carry out some supposed but unexpressed purpose, but will instead implement the testator’s intent as he has manifested it in the language of the will” (Matter of Lezotte, 108 AD2d 1052, 1053 [1985]).
In a number of previous decisions we have voiced concern over what we perceive as an increasing tendency to seek to resolve testamentary inaccuracies, obscurities, or omissions by the testimony of the draftsperson as to the decedent’s intentions (see, Matter of Northcott, decided Sept. 21, 1995; Matter of Suttell, decided Sept. 21, 1995; Matter of Dyke, decided Sept. 30, 1994). In Northcott, we articulated those concerns at some length. Although such remarks were made with specific reference to attempts to correct mistakes in wills, they are equally applicable to requests to alter any documents containing testamentary dispositions of wealth: "A Will is a document of signal importance, expressive of an individual’s last wishes regarding the disposition of the property he has worked a lifetime to accumulate. A testator has a right to expect such *903 an instrument to be prepared by an attorney with the highest level of care and professionalism, and his distributees have the right to expect that only true expressions of the wishes of an individual possessing testamentary capacity and executed in accordance with the proper statutory formalities will be given effect by the courts of this state. It is axiomatic that in construing Wills, courts should not rewrite them. To permit a draftsman to tell us, often years after a Will has been signed, what it is supposed to say (which, in many instances, we fear, will amount to what it should have said, rather than what it does say), is to risk allowing him to rewrite it, abrogating the statutes of Wills and effectively reintroducing the discarded concept of oral Wills. We need not point out the damage that could be done by an unscrupulous draftsman, who might collude with beneficiaries to redefine the parameters of a bequest. But we are also highly skeptical about the value in many proceedings of the testimony of an otherwise honest practitioner who may be decades removed from the event, or who may fear damage to his reputation, loss of business, or even legal action because of a perceived error in the articulation of his client’s desires” (Matter of Northcott, supra).
The New York County Surrogate’s Court, in several decisions (Matter of Storrs, 18 Misc 2d 941 [1959]; In re Powers’ Estate, 85 NYS2d 607 [1948]), but especially in Matter of Salterini (7 Misc 2d 497, 499 [1957]), has expressed many of these same concerns: "If the court were permitted to so far depart from the statutory and judicially fixed standards prescribed in such situations as to substitute the scrivener’s recollection of what the deceased had told him for the language of the will itself it becomes plain at once that the instrument as the repository of the testator’s testamentary program would cease to have any usefulness whatsoever. That is the reason why the courts have consistently declined to permit the introduction of extrinsic evidence except in those cases where the ambiguity exists outside the instrument (viz. — T give my white horse to David Jones.’ Which white horse? Which David Jones?) or where the language of the will gives rise to an otherwise irreconcilable inconsistency, contains a manifest conflict in terms, or is marked by gross uncertainty (Dwight v. Fancher, 245 N. Y. 71; Matter of Tamargo, 220 N. Y. 225; Matter of Smith, 254 N. Y. 283; Brown v. Quintard, 177 N. Y. 75).”
The instant case involves none of the situations enumerated in Salterini (supra), which would support the admission of extrinsic evidence. The language of the will and trust agree *904 ments before us is clear on its face. The slight uncertainty borne by "specifically noting” in Article fourth of the will matters not at all, since predeath gifts intended to supersede bequests under a will are governed by EPTL 2-1.5, which requires a contemporaneous written statement of such intent. No such writing exists. We find no facts at issue to warrant a hearing. On the law, the respondents must prevail. We will not alter the decedent’s testamentary scheme to carry out what the Lezotte court called "some supposed but unexpressed purpose”, but will instead implement the testatrix’s intent as articulated in the will and trust agreements (Matter of Lezotte, supra, at 1053). That intent was to make gifts to the charities under the trust agreements in addition to the bequests to them under her will.
Wherefore, the motion of the respondents for summary judgment is hereby granted.