| **Ginns v Ginns** |
|---|
| 2025 NY Slip Op 31016(U) |
| March 26, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 160849/2022 |
| Judge: Arlene P. Bluth |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** **HON. ARLENE P. BLUTH** | **PART** **14** |
| *Justice* | |

-------------------------------------------------------------------------X

KIKUKO HOSONO GINNS

                                Plaintiff,

                        - v -

ROBERT GINNS,

                                Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 160849/2022 |
| **MOTION DATE** | 03/20/2025 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Defendant's motion for summary judgment dismissing this action is denied and

plaintiff's cross-motion for summary judgment is granted.

**Background**

Plaintiff and defendant were husband and wife. They married in the late 1970s and

divorced in 2005. As part of their separation and eventual divorce, they entered into an Amended

Postnuptial Agreement dated July 31, 2005 (the "2005 Agreement"). Plaintiff contends that

pursuant to this agreement, defendant was required to provide plaintiff with 50% of the

inheritance that he received from his parents' estate. Plaintiff alleges that defendant has refused

to abide by the terms of this agreement and has not turned over any part of this inheritance.

Defendant moves for summary judgment dismissing this case on the ground that the

terms of the 2005 Agreement are unconscionable. He insists he lacked legal representation while

**160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT**
**Motion No.  001**

Page 1 of 10

[* 1]

negotiating this agreement and that he thought agreeing to these terms was a prerequisite to obtaining a divorce. Defendant maintains that plaintiff should be estopped from enforcing the 2005 Agreement because it was the product of her misleading and inequitable conduct. He claims that he received no consideration in exchange for entering into the agreement and that plaintiff threatened him in order to obtain his assent. Defendant complains that the agreement is full of unfair provisions, including one that he remit ten percent of his income from all sources until either he, or plaintiff, dies.

Defendant also complains that plaintiff promised to help him with his business by introducing him to various contacts she amassed while working in immigration law. He admits that this promise was not included in the agreement; he accuses plaintiff of fraudulently inducing defendant into signing the 2005 Agreement. Defendant claims that plaintiff withheld any disclosure about her finances and that should compel the Court to grant his motion.

Plaintiff contends in opposition and in support of her cross-motion for summary judgment that she learned in October 2022 that defendant's mother had passed away on January 10, 2019 and that defendant's mother was the surviving spouse of defendant's parents. She insists that defendant was required to notify her within two weeks of any receipt of inherited funds and that he was supposed to provide her with her share within 6 months. Plaintiff argues that the estate was worth several million dollars and that defendant received half of this estate (as defendant has a brother who allegedly received the other half).

Plaintiff seeks summary judgment and contends that the agreement at issue is viable and should be enforced. She contends that defendant's unhappiness with the terms of the agreement is no basis to render it meaningless. Plaintiff also seeks reasonable legal fees in accordance with the 2005 Agreement.

160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT
Motion No. 001

Page 2 of 10

2 of 10

[* 2]

In opposition to the cross-motion and in reply, defendant argues that he received no inheritance and that he was listed as a beneficiary on his mother's trust well before her death. Defendant claims he even received distributions from this trust prior to her passing. He emphasizes that there was no consideration for the 2005 Agreement. Defendant stresses that under the terms of the agreement, there were three options for defendant to comply but that there was no mechanism to choose between them. He also contends that plaintiff waived any interest in defendant's trust accounts.

**Unconscionability**

"A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made, i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" (*Wachovia Sec., LLC v Joseph*, 56 AD3d 269, 270, 866 NYS2d 651 [1st Dept 2008] [internal quotations and citations omitted]).

"A postnuptial agreement which is fair on its face will be enforced according to its terms unless there is proof of fraud, duress, overreaching, or unconscionability, bearing in mind that an agreement is not unconscionable merely because, in retrospect, some of its provisions were improvident or one-sided. Likewise, a marital settlement is a contract subject to principles of contract interpretation [and] a court should interpret the contract in accordance with its plain and ordinary meaning. Where the agreement is clear and unambiguous on its face, the parties' intent must be construed from the four corners of the agreement, and not from extrinsic evidence" (*Rauso v Rauso*, 73 AD3d 888, 889, 902 NYS2d 573 [2d Dept 2010]).

**160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT**
**Motion No.  001**

**Page 3 of 10**

[* 3]

The Court finds that defendant did not come close to meeting his burden to show that the agreement was unconscionable. In his affirmation (NYSCEF Doc. No. 25), he raises complaints that amount—in this Court's view—to mere dissatisfaction or regret with signing the subject 2005 Agreement. He complains that the agreement was signed "without financial disclosure" (NYSCEF Doc. No. 25, ¶ 3). However, the agreement states that "Each party has had an opportunity to make independent inquiry into the financial circumstances of the other" (NYSCEF Doc. No. 28, ¶ 41).

He also insists that he didn't have an attorney. However, the 2005 Agreement states that "Robert has declined to be represented by an attorney in this transaction. Robert has had counsel represent him in earlier transactions between the parties including the original Postnuptial Agreement and understands the implications and risks of proceeding without legal representation. Nonetheless, with full knowledge and understanding of this undertaking, he has waived this right to an attorney and decided to proceed without legal counsel" (*id*. ¶ 40). And defendant does not deny he signed this agreement

Defendant also admits that he chose not to litigate the divorce and instead decided to sign this agreement due his limited financial resources (NYSCEF Doc. No. 25, ¶ 11). That is not a sufficient reason to ignore a valid agreement. Rather, it shows that defendant made a conscious decision to sign the agreement. His regret in signing, decades later, is not a basis to find that there was something unconscionable. Defendant's other substantive concerns about the fairness of the agreement are inapposite; as noted above, the fact that some provisions might be one-sided is not a basis to invalidate it.

The Court recognizes that defendant claims he signed the agreement, at least in part, because plaintiff kept insisting that he do so. He characterizes it as "harassment" and that he "felt

**160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT**
**Motion No.  001**

**Page 4 of 10**

4 of 10

trapped." The Court observes that matrimonial disputes often involve highly charged and contentious communications. However, those types of heated discussions are not, standing alone, a reason to invalidate an agreement decades later.

Similarly, the Court observes that defendant wholly failed to explain how plaintiff fraudulently induced him into signing the subject agreement. The takeaway from his affirmation is simply that he signed the agreement in order to finalize the divorce—which also suggests there was valid consideration. Nothing on this record compels the Court to find that this agreement should be set aside on unconscionability grounds or even that a hearing is required to explore the issue further. Defendant did not raise an issue for a trial.

**The Agreement Itself**

The Court must now turn to the terms of the agreement itself. It provides that:

"Robert acknowledges that he expects to receive a substantial inheritance from his parents (the "Inheritance Funds"). In the event of a Termination of Marriage, Robert shall provide Kikuko with 50% of all Net Inheritance Funds (defined as the Inheritance Fund received by Robert less adjustment for taxes and other expenses). Robert shall provide Kikuko with 50% of all Net Inheritance Funds regardless of whether Inheritance Funds are received by Robert during the parties' marriage or after the parties' marriage has terminated." (NYSCEF Doc. No. 28, ¶ 21).

"'Robert's "Full Inheritance' shall be defined as one half of the estate of his parents as divided between Robert and his brother" (*id*. ¶ 22). Defendant agreed to notify plaintiff within two weeks of his parents' death, notify plaintiff within two weeks of receiving any inheritance funds and provide plaintiff her half within six months thereafter (*id*. ¶¶ 23-24). There is no dispute that defendant wholly failed to comply with these notification obligations.

The agreement also states that:

"In the event Robert does not receive his Full Inheritance, Robert shall devise and bequest thirty (30%) of his estate to Kikuko in his will. To insure [sic] that this

**160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT**
**Motion No.  001**

**Page 5 of 10**

occurs upon his death, as above, within 90 days from the signing hereof, or within 90 days of the final entry of a judgment of divorce between the parties, whichever is later. Robert shall have a Last Will and Testament executed to effect [sic] the terms of this Agreement. If Robert dies failing to comply with the terms of this Paragraph, such terms of this Agreement shall be a first charge against his estate. This provision shall apply if: a) Robert does not receive his Full Inheritance for whatever reason, including but not limited to the designation of his Full Inheritance in the form of a trust naming him as a beneficiary but preventing his access to the principal of the trust; and b) at the age of 70, he has not yet received his inheritance and he is unable to continue his Mass Mutual term life insurance policy number [number withheld] (or such similar policy) in the amount of $250,000.00 naming Kikuko as beneficiary" (*id*. ¶ 25).

Defendant does not deny that he did not name plaintiff in his will within 90 days and he admits that he stopped paying the premiums on the life insurance policy (NYSCEF Doc. No. 25, ¶ 32). Nor does defendant contend he failed to receive a "Full Inheritance." Instead, the dispute appears to be whether defendant actually received an inheritance at all.

Defendant claims he did not receive an inheritance as contemplated by the agreement. He claims that when his mother passed away, her assets were in a trust she had created during her lifetime. Defendant claims that these monies do not count as part of his mother's estate and so it does not qualify as an inheritance under the terms of the 2005 Agreement. In other words, defendant seemingly argues that he need not turn over anything to plaintiff because the monies he received do not qualify as an inheritance and he ignored the other terms of the 2005 Agreement.

Plaintiff points out that under the terms of defendant's mother's trust, any remaining income and principal was to be distributed, equally, to defendant and his brother (NYSCEF Doc. No. 34, Article III[E]). As plaintiff points out, a "trust agreement functions as a Will substitute or Will equivalent," (*Matter of Estate of Campbell*, 171 Misc 2d 892, 898 [Sur Ct, Erie County 1997]).

160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT
Motion No.  001

Page 6 of 10

[* 6]

"Under long-standing rules of contract interpretation, where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole. Additionally, a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect" (*195 B Owner LLC v Anthropologie, Inc.*, 228 AD3d 418, 419, 213 NYS3d 30 [1st Dept 2024] [internal quotations and citations omitted]).

Applying these principles to the 2005 Agreement, the Court grants plaintiff summary judgment on her cross-motion to the extent that defendant must pay plaintiff fifty percent of whatever he received from his mother's trust following her death. The practical interpretation of the parties' unambiguous postnuptial agreement is that upon the death of defendant's last remaining parent, he would distribute fifty percent of whatever he received from his parents to plaintiff.

To be sure, the insertion of the word estate into the definition of "Full Inheritance" complicates the instant situation because defendant's distribution was technically from a trust account rather than from an estate that would need to go through probate. But this Court is unable to embrace defendant's argument that this classification (trust versus an estate) somehow entitles him to get out of this agreement altogether. That interpretation would give this entire agreement no effect which, as noted above, conflicts with traditional rules of contract interpretation. The clear purpose of this agreement was to ensure that plaintiff get fifty percent of whatever defendant received from his parents, not to create a loophole whereby defendant could ignore his other obligations (such as not including plaintiff in his will or maintaining the insurance policy) and ensure plaintiff got nothing.

160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT
Motion No. 001

Page 7 of 10

The Court also rejects defendant's argument to the extent he claims that the 2005 Agreement foreclosed plaintiff's ability to seek a distribution from a trust account. The references to trust accounts in the 2005 Agreement contemplated that the parties would waive any claims to trust accounts held by the parties at the time of the termination of the marriage (NYSCEF Doc. No. 28, ¶¶ [14][f], [34]). These references to trusts were made in paragraphs about separate bank or brokerage accounts.  The Court cannot interpret these references to apply to monies received from defendant's mother's trust account particularly in light of the purpose of the 2005 Agreement. Such an interpretation would render Article IV as meaningless.

The Court recognizes that defendant received monies from the trust prior to his mother's death (NYSCEF Doc. No. 35). In this Court's view, those distributions do not constitute part of defendant's inheritance and should not be included in any calculation of the amount due to plaintiff.

Because the Court grants plaintiff's cross-motion, the Court also awards reasonable legal fees as the postnuptial agreement contemplates the recovery of such fees when an action is brought to enforce this agreement (NYSCEF Doc. No. 28, ¶ 61).


**Summary**

The record on this motion makes clear that defendant, understandably, deeply regrets signing the 2005 Agreement.  According to defendant, he desperately wanted to get out of the marriage. His brother observes that "After what she had put him through, he was ready to sign anything to secure that cooperation" (NYSCEF Doc. No. 26, ¶ 6).  However, those arguments do not state a sufficient basis to invalidate an agreement that defendant admits he signed. It does not show something like fraud or duress; in fact, the provisions of the agreement are quite

**160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT**
**Motion No.  001**

**Page 8 of 10**

8 of 10

straightforward and unambiguous. People often regret signing agreements that they later believe had unfavorable terms. That, standing alone, is not a reason to conduct an inquiry into whether the agreement is unconscionable.

And there is no doubt that defendant breached the contract. He did not comply with any of the notice provisions (NYSCEF Doc. No. 28, ¶¶ 23-24) nor did he maintain the life insurance policy for plaintiff or write plaintiff into his will within 90 days. That leaves the Court to enforce the provision requiring him to provide plaintiff with 50% of the inheritance he received from his mother. Defendant's attempt to claim that what he received from his mother's trust was not an inheritance is without merit as it would require the Court to rewrite the 2005 Agreement and render the agreement inoperative. Any practical reading of the 2005 Agreement contemplates that plaintiff is to receive half of the net of whatever defendant received following his mother's death.

Although the Court finds that plaintiff is entitled to summary judgment on liability to the extent that defendant must pay her fifty percent of whatever he received following his mother's passing, the Court observes that there must be a trial with respect to damages. Plaintiff did not include any information about how much she seeks or what discovery revealed concerning this amount. Therefore, that assessment of damages and reasonable legal fees will be determined at trial.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is denied; and it is further

ORDERED that plaintiff's cross-motion is granted on liability to the extent that she is entitled to receive fifty percent (50%) of the net of whatever defendant received from his mother

**160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT**
**Motion No.  001**

**Page 9 of 10**

9 of 10

[* 9]

following her death, even if what he received did not go through probate, and the trial shall include an assessment of how much plaintiff is owed plus reasonable legal fees.

| 3/26/2025 | | | | |
|---|---|---|---|---|
| **DATE** | | | **ARLENE P. BLUTH, J.S.C.** | |

| **CHECK ONE:** | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | | DENIED | GRANTED IN PART | X | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**160849/2022   GINNS, KIKUKO HOSONO vs. GINNS, ROBERT**
**Motion No.  001**

**Page 10 of 10**